## COLISEUM MOTOR CO. v. HESTER
### (No. 1686; Sept. 26, 1931; 3 Pac. (2d) 105)

For the plaintiff in error, there was a brief by *Gillette & Clark,* of Denver, Colorado, and *Durham & Bacheller,* of Casper, Wyoming, and an oral argument by *Mr. H. H. Clark.*

For the defendant in error there was a brief by *I. G. Mc-Cann* and *R. R. Rose*, of Casper, Wyoming, and oral arguments by *Mr. McCann* and *Mr. Rose*.

*Gillette & Clark, Durham & Bacheller*, in reply.

BLUME, Justice.

This action was brought by Minnie G. Hester, as administratrix of the estate of Robert M. Gray, deceased,

against the Coliseum Motor Company, to recover damages from the defendant on account of the death of Gray in an automobile collision on September 21st, 1928, Gray riding in a Chevrolet car as the guest of one Gidley. He was killed instantaneously in the collision of that car with the truck driven by the defendant. The case is here the second time. Hester v. Coliseum Motor Company, 41 Wyo. 345, 285 Pac. 781, from which opinion many of the facts may be gathered. Upon the retrial of the case, to a jury, a verdict was returned for $20,000.00, upon which judgment was entered, and from this the defendant has appealed. Young Gray, at the time of his death, was 19 years and 10 months of age. He left surviving him his mother, two brothers, one sister and one half sister. His mother is married the second time and is supported by her husband. The testimony shows that young Gray was a dutiful and affectionate son, lived with his mother, paid her some money for room and board, and was an energetic and thrifty young man. The sufficiency of the evidence to show negligence on the part of the defendant is not questioned, and the main points herein raised by the appellant relate to the measure of damages and the elements thereof and involve the correctness of an instruction of the court thereon.

1. Up to within less than a century ago, no damages were recoverable for the death of a free human being. Justice Manning was led to remark, in 1885, in the case of Amburg v. R. Co., 37 La. Ann. 650, 55 Am. Rep. 517, that:

"Legislation and jurisprudence have combined to perpetuate the extraordinary doctrine that the life of a free man cannot be made the subject of valuation, and under the domination of that dogmatic utterance, made earlier than the Roman Digest, reproduced therein, and echoed by the courts of all countries from then till now, the singular spectacle has been witnessed of courts sanctioning damages for short-lived pains and refusing them for a long-life sorrow and the pecuniary losses consequent upon the death of one from whom was derived support, comfort and even the necessary stays of life."

The statement is not quite true as to the Roman Law. Damages for the killing of a slave were recoverable. D. 9, 2, 7, 4; D. 9, 2, 9. But a slave was considered property; damages were allowed on account of his unlawful death just as for the unlawful killing of cattle, and this cannot, accordingly, be considered a true exception to the rule. But two singular exceptions were made, not by the lawmakers, but by the jurists and the judges: If a free man was in a place where people were accustomed to pass and an object fell or was thrown from a building and he was killed, damages in the sum of fifty gold pieces could be recovered. D. 9, 3, 1 pr. So the aediles, the supervisors of the markets, issued an edict that if a wild or untamed animal killed a free man in a public place, the owner should be held liable in damages to the extent of 200 pieces of gold. D. 21, 1, 42. Aside from these exceptions, however, the rule was that the life of a free man could not me made the subject of valuation. D. 9, 3, 7. It is held at times that the rule among the Anglo-Saxons and other Teutonic nations was different. Pennsylvania R. Co. v. McCloskey, 23 Pa. 526; West v. R. Co., 81 N. H. 522, 129 Atl. 768, 42 A. L. R. 176. There is an apparent justification in this claim. "Every man's life," says Reeves, History of English Law, Vol. 1, p. 193, "had its value, called a 'were' * * * The king * * * was rated at 30,000 thrymsae, an archbishop or earl, at 15,000; a bishop or ealderman at 8,000 * * * a priest or thane, at 2,000; a common person at 267 thrymsae." But were-gild was paid originally to take the place of feud, to stay the hands of the private avenger, to make atonement, in this manner, for taking life, instead of atoning for it by the taking of another. And while, doubtless, parties came to look at it in time as compensation, its origin was not forgotten, and when the government itself came to punish murder as a crime the system of were-gild disappeared. Holdsworth, Hist. of Eng. L. 2, 45; Pollock & Maitland, Hist. of Eng. L. 2, 450, 459. Hence, when Lord Ellenborough in 1808, in the case of Baker v. Bolton, 1 Campbell

493, announced that "in a civil court the death of a human being cannot be complained of as an injury," he was fundamentally right. The public conscience had simply not yet awakened to the fact that life as such has a pecuniary value. The age of chivalry with its continuous combats and the system of duels doubtless contributed to this fact. And the cheapness of human life is no less indicated by the multitude of capital offenses, and the scaffolds erected as a punishment for many crimes, which we, in this age of enlightenment, would consider minor in character.

In 1846 the English Parliament passed what is known as Lord Campbell's Act, providing as follows:

"That whensoever the death of a person shall be caused by the wrongful act, neglect, or default of another and the act, neglect, or default is such as would (if death had not ensued), have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. That every such action shall be for the benefit of the wife, husband, parent, and child of the person whose death shall have been so caused, and shall be brought by and in the name of the executor or administrator of the person deceased; and in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively, for whom and for whose benefit such action shall be brought; and the amount so recovered, after deducting the costs not recovered from the defendant, shall be divided among the befor-mentioned parties in such shares as the jury, by their verdict, shall direct."

A law similar thereto has been enacted in nearly every state in the Union. We enacted our law on the subject in 1871, an almost exact copy of the West Virginia law on the subject (Code W. Va. 1868 c. 103). We have made no change therein since that time, except striking out the lim-

itation as to the amount recoverable, and it reads (Secs. 5560 and 5561, Wyo. C. S. 1920) as follows:

"§ 5560. Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof; then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter."

"§ 5561. Every such action shall be brought by, and in the name of, the personal representative of such deceased person; and the amount received in every such action shall be distributed to the parties and in the proportions provided by law, in relation to the distribution of personal estates left by persons dying intestate. In every such case, the jury shall give such damages as they shall deem fair and just, and the amount so recovered shall not be subject to any debts or liabilities of the deceased; provided, that every such action shall be commenced within two years after the death of such deceased person."

2. It is the theory of the appellant that the statute in question is a survival act. By that is ordinarily meant a statute which merely preserves and continues the right of action which the deceased had prior to his death. And it is argued that, under the authorities (17 C. J. 1197), since the decedent died instantaneously he never had any right of action at all, and therefore respondent has none. Much and abstruse learning has been expended upon the proposition as to whether statutes like that under consideration are survival statutes or statutes creating a new cause of action. We cannot agree with the appellant's argument. It flies directly in the face of the express provisions of the statute, which says specifically that an action for damages shall lie notwithstanding the fact that death may ensue, without limiting the right to cases where death is not in-

stantaneous. Counsel would read that into the statute. It is not there. The foundation of the action is the wrongful act of the defendant which resulted in death. No remedy existed at common law. The statute was intended to make a change. It is a survival statute in the sense that damages may now be recovered for the wrongful act notwithstanding that death may result, whether instantaneously or otherwise. It gives a new cause of action for the same reason and for the further reason that the action is not one transferred from the decedent to the administrator but is one given directly to the administrator for the benefit of certain living relatives. By comparing the provisions of our statute with that of Lord Campbell's Act above quoted, it will be seen that the acts are similar. In Tiffany, Death by Wrongful Act (2nd Ed.) Sec. 73, it is said:

"It follows from what has been said that under statutes of the general type of Lord Campbell's Act, which create a new cause of action, and give damages for the injury resulting from the death, it is generally immaterial whether the death is or is not instantaneous. This point seems too clear for argument, and that such is the law has been tacitly assumed in nearly all the cases which have arisen under these statutes, and in which death resulted immediately from the injury."

The only possible point that might arise in this connection is as to whether the act in question applies when the decedent survives and brings an action under our survival statute (Section 5747, Wyo. C. S. 1920). In Maine and Michigan the law similar to that of Lord Campbell's Act is applicable only when death is instantaneous. Tiffany, supra, Sec. 73. We need not decide the point, since it does not arise in the case.

3. Much more difficult is the question of damages and the elements thereof. Here almost every conceivable theory is represented in the authorities, the differences in the statutes accounting for at least a part of the differences in the

holdings. In Mississippi the statute provides that the damages recoverable are such "as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all of the parties interested in the suit." Under this statute exemplary damages, damages for physical and mental suffering of the decedent, if the death was not instantaneous, and the present value of the expectancy of the decedent may be recovered. Tiffany, Death by Wrongful Act, Sec. 138; Ill. Central R. Co. v. Fuller, 106 Miss. 65, 63 So. 265. In New Hampshire the law is specific and provides that "if death was caused by the injury, the mental and physical pain of the deceased, the expense occasioned to his estate by the injury, the probable duration of his life but for the injury, and his capacity to earn money, may be considered as elements of damage in connection with other elements allowed by law." Tiffany, supra, Sec. 47.

In a number of other states, like Iowa, Oregon, Arizona (where the statute is similar to ours), and other states, it is held that the damages are for the benefit of the estate of the decedent, and not, directly, for the benefit of certain beneficiaries. And the general rule in these states is that the proper damages are the amount which the decedent would have saved to his estate, if he had lived, taking into consideration his age, health, industry, economy, etc. 17 C. J. 1226. In these states, a substantial amount may be recovered, of course, where a man is shown to have had fixed habits, good earning and saving capacity, while, on the other hand, where no such habits are shown, the net value of what his estate would have been would seem to be rather speculative, and so it has been held that where the decedent spent everything on himself, so that he could accumulate nothing, the damages would be nominal. Central etc. R. Co. v. Alexander, 144 Ala. 257, 46 So. 424, 2 L. R. A. (N. S.) 144. On this point the Supreme Court of California, in the case of Burk v. R. R., 125 Cal. 364, 57 Pac. 1065,

1066, 73 Am. St. Rep. 52, where the plaintiff sued for the death of his brother, the court said:

"Confessedly, plaintiffs had no legal claim on deceased for anything, and he owed no duty to them to accumulate an estate, and leave it to them. Let us consider upon what a sea of uncertainty the jury must embark. (1) Would the deceased have had the health to work and accumulate, and would he have done so? He never has saved anything, and it does not appear that he could. (2) May he not have married, and have had children of his own, who would inherit? (3) Might he not by will have disinherited the plaintiffs? And (4) might he not have outlived them? The majority of men die without much property. Whether the deceased would have succeeded in accumulating, and, if he had been successful, would have left it to plaintiffs, is matter of pure speculation. Such a guess as to probabilities is not, according to settled rules and maxims of the law, proper ground for the award of damages. I see no reason why this class of cases should constitute an exception. If it was intended to punish for wrongdoing, the law could be understood. But the courts hold * * * that plaintiffs can recover only the number of dollars they have lost by the death * * *."

In most states, however, under statutes similar to Lord Campbell's Act, it is held that inasmuch as the action which the decedent had is not transferred to the survivors, but since they have an independent claim, it is the damage, the loss to the survivors, which is to be compensated. The English act, as noticed, provided that the damages to be assessed should be proportioned to the injury resulting from the death to the survivors. It was an act entitled: "An act for compensating the families of persons killed." And it was held in 1852 that the title together with the provisions of the act indicated that the damages intended by the statute were those sustained by the survivors by reason of the death, limiting the damages to those that are pecuniary. Blake v. Ry. Co., 18 Q. B. 93, 118 Eng. R. 35. Some of our states, like Maryland, North Dakota, South Dakota, South

Carolina and others have closely followed the English act in the language last above mentioned, and these states hold the same as Blake v. Ry. Co. Tiffany, supra, Sec. 153. Other states have slightly changed the language, providing that the damages may be such a sum as the jury shall deem fair and just compensation, with reference to the pecuniary injuries resulting from the death to certain survivors. That is true in Arkansas, Illinois, Maine, Michigan, Nebraska, New Jersey, Ohio, Vermont and Wisconsin. Tiffany, supra, Sec. 153. In these states, too, the English rule has been followed.

There is another group of states where the measure of damages is directed by the legislature to be the amount which may appear to be just, without specification of the elements thereof. These states include Wyoming, Virginia, West Virginia, and a group of western states, including Utah, Montana, Idaho, Washington, California, and Arizona. Tiffany, supra, Sec. 153, in commenting on the rule in these and other states, says:

"In spite of these differences in phraseology, it is believed that the principles applicable to the measure of damages under all these acts is generally the same, viz: that the damages are measured by the pecuniary loss resulting to the beneficiaries of the action from the death."

The statement is not correct as to Arizona. Southern Pacific Co. v. Wilson, 10 Ariz. 162, 85 Pac. 401. The statute in that state read originally like Lord Campbell's Act, but it was changed in 1901 to read like the statute in this state, and the court reasoned that this change indicated that the legislature must have intended the action to be brought for the benefit of the estate, rather than directly for the benefit of those named in the statute. In all of the other states just mentioned which have had occasion to pass upon the question—and all, except Wyoming, have—it is held that the damages are the loss resulting to the beneficiaries named in the statute. We are inclined to agree with the holding in

these states. Justness and fairness, the measure of damages prescribed by our statute, are broad terms. But whatsoever meaning philosophers may give them, and howsoever extensive they may think the field covered by them, to be, we must, in connection with earthly things, necessarily measure them with reference to and in connection with living persons or a group of living persons, for the dead can receive no benefit from damages that may be awarded. The benefit to society need not be considered, for no punitive damages are asked. So we can consider only those for whose benefit the action is brought. Where damages are allowed to an estate, and for the benefit of an estate, the near relatives may, of course, be directly benefited, the extent of which must be indicated by the statute. There is, however, no indication in ours that the action shall be brought for the benefit of, and because of a loss to, the estate. The contrary is true. The administrator acts but in the capacity of a trustee. Anderson v. Hotel Co., 92 Va. 687, 24 S. E. 269; Batchoff v. Copper Co., 60 Mont. 189, 198 Pac. 132. Justness and fairness accordingly must be determined from the standpoint of those whom he represents, and hence it is the damages which they have sustained which must be compensated.

4. Virginia and West Virginia stand by themselves as to the elements of damage to be recovered. And while it is held that none may be recovered for the suffering of the decedent or for loss directly to him (Virginia Iron Co. v. Administrator, 128 Va. 280, 105 S. E. 107), damages may be recovered which (1) are not only of a strictly pecuniary nature, but (2) also those arising by reason of the loss of the care, attention and society of the deceased, and (3) damages for the sorrow and mental anguish caused to the parties mentioned in the statute by reason of the death. Furthermore, an amount may, in the proper case, be added for exemplary damages, though in Virginia these damages seem to be confounded with those for suffering. Mathews v. Warner's Admr., 29 Gratt. (70 Va.) 570, 26 Am. Rep.

396; Baltimore etc. R. Co. v. Admr., 32 Gratt. (73 Va.) 394; Norfolk etc. R. Co. v. Admr., 103 Va. 356, 49 S. E. 489; Ratcliffe v. Admr., 123 Va. 781, 97 S. E. 307; Sample v. Light Co., 50 Va. 472, 40 S. E. 597, 57 L. R. A. 186; Kelly v. R. Co., 58 W. Va. 216, 52 S. E. 520, 2 L. R. A. (N. S.) 898; Wigal v. Parkersburg, 74 W. Va. 25, 81 S. E. 554, 52 L. R. A. (N. S.) 465; Hawkins v. Coal & Coke Co., 66 W. Va. 415, 66 S. E. 520; Morris v. R. R. Co., 107 W. Va. 97, 147 S. E. 457.

In Mathews v. Warner's Adm'r. it was said:

"The statute of New York, and of all the other states, modelled upon the English statute, are found to be in the following terms, or those of like import: 'The jury may give such damages as they may deem fair and just compensation (not exceeding a specified sum), with reference to *the pecuniary injuries* resulting from such death to the parent next of kin,' &c, &c. In our statute, instead of these words, or words of like import, being employed, it is declared that 'the jury in any such action may award such damages *as to it may seem fair and just,* &c. Certainly, in the Virginia statute, there are no words of limitation as in the English statute, and those modelled thereon, confining the jury in the assessment of damages to merely pecuniary injury; but, by the very terms of the statute, the damages are such 'as to the jury may seem fair and just.' We are bound to presume that the legislature which enacted this law was familiar with the English statute, and those of the other states of the Union, and of the English and American decisions under them. And it is a most significant fact, that with the English and American statutes before them, and familiar with the decisions under them, the legislature, after following the English statute and the New York statute up to the point where the measure of damages in the one case is declared to be 'proportioned to the injury,' and in the other 'with reference to the *pecuniary injuries* resulting from such death,' at that point, discarded these terms, and in lieu thereof adopted the language 'such damages as to the jury may seem fair and just.' It is impossible to conceive that the omission of such language, and the adoption of other terms meaning the very reverse, could have been accidental. We must conclude that it was done with

a design, and that design plainly, by all the recognized rules of construction, was to declare that in an action for the death of a party caused by the wrongful act, neglect or default of any person or corporation, such damages may be recovered 'as to the jury may seem fair and just.' ''

In Baltimore etc. R. Co. v. Adm'r., supra, the court, speaking of the death of a child, said:

''It follows that there being no pecuniary loss in such cases, and the jury not being confined by the statute (as already construed by this court in Mathew's adm'r. v. Warner) to mere pecuniary loss to the survivors for whose benefit the action may be brought, it follows, I say, that mental suffering and anguish, want of comfort and solace, may be taken into consideration in the computation of damages sustained in the particular case. In other words, it is plain that under our statute, the jury, not confined to mere pecuniary loss, 'may award such damages as to them may seem fair and just,' according to the facts and circumstances of each case. The only limit which the statute imposes is to confine the recovery in every case to a sum not exceeding $10,000.''

And in Anderson v. Hygeia Hotel Co., 92 Va. 687, 24 S. E. 269, 271, it was said, in distinguishing a pure survival statute from the statute modelled after the English act:

''But in a suit by the personal representative under the statute, the evidence would primarily relate to and the damages be not only for the pecuniary loss the wife, husband, parent, or child, as the case might be, had sustained, but it would be proper for the jury, in computing the damages, to take also into consideration the grief and mental anguish of such relatives, and their loss in being deprived of the care, attention, and society of the deceased, and to include therefor in the verdict such sum as the jury might deem fair and just.''

The group of western states already mentioned, aside from Arizona, wherein the damages allowed are those which are just, occupy, as it were, a middle ground between those

which allow strictly pecuniary compensation only on the one hand and West Virginia and Virginia on the other, and allow as elements of damages, first, strictly pecuniary losses on the part of those in whose behalf the action is brought, and second, the pecuniary loss sustained by a wife, minor children or parents, and in some instances by collateral relatives, on account of being deprived of the advice, comfort and society which they enjoyed prior to the death of the decedent and which would have been continued for their benefit. They reject allowances for mental suffering of the survivors. Some of the cases are: Munro v. Company, 84 Cal. 515, 24 Pac. 303, 18 Am. St. Rep. 248; Pool v. Southern Pac. Co., 7 Utah 303, 26 Pac. 654; Webb v. Ry. Co., 7 Utah 17, 24 Pac. 616, 618; Anderson v. Ry. Co., 15 Idaho 513, 99 Pac. 91; Butler v. Townsend, (Idaho) 298 Pac. 375; Mize v. Telephone Co., 38 Mont. 521, 100 Pac. 971, 129 Am. St. Rep. 659, 16 Ann. Cas. 1189; Gilman v. Hardware Co., 42 Mont. 96, 111 Pac. 550; Walker v. McNeil, 17 Wash. 582, 50 Pac. 518; Skidmore v. Seattle, 138 Wash. 340, 244 Pac. 545; Listen v. McReynolds, 69 Mont. 480, 223 Pac. 507.

The statute in California, set out in Bond v. United Railroads, 159 Cal. 270, 113 Pac. 366, 369, 48 L. R. A. (N. S.) 687, Ann. Cas. 1912C, 50 (those in the other states being identical with or modelled after it), is in two sections, the first of which provides for an action on behalf of the father or mother or guardian in case of the death of a minor child, and the second of which provides for an action by the heirs or administrator in case of death of a person other than a minor, and which further provides: "In every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just." We take it that, though there is some difference in the provisions for bringing the action, the measure of damages is identical with that in Wyoming, and that the addition that whatever damages are just must appear by the circumstances of the case is necessarily implied under our

law. The question of mental suffering arose in the case of Cleary v. R. R. Co., 76 Cal. 240, 18 Pac. 269, 270, and in that case the court said:

"It is true, the damages awarded to the parent in such cases are not for the pain and suffering inflicted on the infant; but the loss of the child's services during minority, the mental anguish and suffering of the parents, in addition to the medical attendance and funeral expenses, are elements which under our peculiar statute are proper to be considered in determining the amount of the recovery."

The question was re-examined in the later case of Munro v. Company, 84 Cal. 515, 24 Pac. 303, 305, 18 Am. St. Rep. 248, without, however, referring to the Cleary case, and the court, after an exhaustive investigation, came to the opposite conclusion, saying in part:

"The opportunity to run into wild and excessive verdicts would be allowed them (the jury) if the rule was as contended by plaintiff. The standard would be too vague and uncertain to be established as a rule of law for the admeasurement of the rights of the parties. * * * In allowing the jury to take into consideration the loss of the comfort, society and protection of the deceased, we think we have gone far enough; but this, we think, should be allowed in the case of a wife, as in Beeson's case, 57 Cal. 20, or a mother. * * * The sorrow, grief and mental suffering of the mother, in our judgment, was too remote a circumstance to be taken into consideration in the estimate of damages, and was not allowable under our statute."

The Supreme Court of Utah considered the same question in the case of Webb v. Ry. Co., 7 Utah 17, 24 Pac. 616, 618, without knowing of the yet unpublished case of Munro v. Company, supra, and disagreeing with the Cleary case, and with the Virginia case of Mathews v. Warner, 29 Gratt. (70 Va.) 570, 26 Am. Rep. 396, says in part, leaving out the cases cited, as follows:

"But the decisions in California and Virginia in the cases of Cleary v. Railroad Co. and Matthews v. Warner are in conflict with the rule almost uniformly laid down by the courts of England and the United States to the effect that only the pecuniary loss sustained can be compensated for, and that no compensation can be given for the mental anguish or suffering of the heirs or next of kin of the deceased. We cite only a few of the many authorities that might be cited on this point. * * * But the word 'pecuniary' in this connection is not construed in any very strict sense, and the tendency is to still greater liberality, and to include every element of injury that may be deemed to have a pecuniary value, although this value may not be susceptible of positive proof, and can only be vaguely estimated. It may include the loss of nurture, of the intellectual, moral, and physical training which a mother only can give to children. * * * It may include the loss of expected services of children who at the time of their death are too young to render any service, * * * or of children or persons under no legal or moral obligation to render service or support, if the circumstances shown render it probable it will be rendered, * * *. It may include the loss of the society of a near relative, * * * and may include damages for the loss of the father by children who are of full age living away from the home of the deceased and supporting themselves, * * *. The damages, the pecuniary injury, in cases under this statute, cannot be proved with even an approach to accuracy, and yet they are to be estimated and awarded, for the statute has so commanded, and the jury is to give such damages as may be just under all the circumstances. * * * The difficulty of proving or estimating the pecuniary loss to the heirs occasioned by the death of a human being is recognized by all the courts. But if the mental suffering of the heirs is to be taken into the account, and compensated for in money, the difficulty is infinitely increased. Upon what rule in computing damages can the sorrows of the heirs be estimated? If their number should be great, and their grief poignant, the damages would be beyond computation. But even if the number of the heirs should be small, their mental anguish might be so intense that, in the estimation of a sympathetic jury, the damages given would be such as to bring bankruptcy to the wealthiest defendant. Affection and tears, even for a distant relative, would be given a cash valuation in the verdict, and

which might be out of all proportion to the real value of
the life of the deceased. In what manner shall the mental
anguish, its intensity, or duration, or whether feigned or
not, be determined. If the husband should be tyrannical,
and abusive, or the wife a shrew, the death of either might
not bring to the survivor such poignancy of grief that it
could be assuaged only by a large verdict; it might in fact
bring pleasure instead of sorrow, yet the mental anguish
might be successfully assumed for the purposes of the
trial, and the defendant have no means of exposing the
hypocrisy of the pretended grief. If a son should be a
drunkard, or indolent or vicious, the real mental anguish
of the mother at his death might not be so great that she
would refuse to be comforted without the solace of a sum
of money. These are some of the difficulties courts and
juries would have to encounter if the mental sufferings of
surviving relatives should be held to be elements of damage.
While the question is not free from difficulty, we are of the
opinion that the court erred in admitting evidence of the
mental suffering of the mother of the deceased, and in in-
structing the jury that they might take into consideration
the mental pain and suffering caused the mother by the
death of her son. We think the mental suffering of the
heir, on account of the death of a deceased relative, too
remote and sentimental to be a proper element of damage
under the statute, and is not necessary, as held in Matthews
v. Warner, supra, to enable exemplary damages to be re-
covered, where malice, wantonness, or such gross negligence
as amounts to willfulness, are shown, neither of which, how-
ever, are claimed to have been shown in this case.''

Again the same court, in speaking of the rule that more
than strictly pecuniary loss should be awarded, said in
Evans v. R. Co., 37 Utah 431, 108 Pac. 638, 641, Ann Cas.
1912C, 259:

''If all cases were to be treated alike, and the damages
were to be limited strictly to the mere pecuniary value of
the loss of support and maintenance, the language of the
statute, no doubt, would have been framed in accordance
with the statute of Illinois, which, as we shall see, limits the
recovery strictly to the pecuniary value of the loss of sup-
port sustained by the wife and minor children. True, the
loss under our statute in a large sense is a pecuniary loss

merely, since nothing can be recovered by way of solace for injured feelings or for mental suffering of the family by reason of the death of the husband and father. Whatever is allowed by the jury must therefore be by way of pecuniary recompense for the loss sustained by the wife and minor children, and must be strictly limited (1) to what the evidence shows the deceased contributed, and thus would probably have continued to contribute to them in money or other means by way of support and as an accumulation to his estate; and (2) to the money value of the injury suffered by the wife and minor children by reason of the loss of the advice, comfort, and society which they enjoyed prior to the death of the deceased and which would have been continued for their benefit. If the evidence is to the effect that the widow and minor children suffered no loss upon the first ground because the deceased provided neither money nor other means of support, they still may be entitled to something upon the second ground, because the society of the deceased may have been a comfort and his advice of material assistance to them. Again, a wife and children may have lost little or nothing upon either or both grounds, and the jury should then compensate them only for what they have lost, and, in case they have lost upon both grounds, they should receive compensation to the extent of their loss. The jury should be informed that any allowance they may make must be limited to what the wife and children received from the deceased upon either one or both grounds to which we have referred, and the jury should be admonished that in no event can the pecuniary interests or the physical requirements of the wife or children be considered for the purpose of enhancing the damages which are caused by the negligent acts complained of. * * * The Virginia Supreme Court of Appeals, under a statute no broader than ours, as appears from the foregoing cases, carried the doctrine even farther and permits a recovery by way of solace for injured feelings. No other court, so far as we know, however, goes to this extent. It should be stated, however, that under the Virginia statute $10,000 is the limit of recovery.''

In view of the fact that our statute provides that what is fair and just shall be the measure of damages, we think that we should adopt the liberal rule prevailing either in Virginia and West Virginia, or that prevailing in the group of

western states mentioned. We think we should adopt, speaking generally, the rule in the latter states, and exclude mental suffering of the survivors as an element of damages, for the reasons stated in the California and Utah cases from which we have quoted, also bearing in mind that the Virginia and West Virginia statutes limit the amount of recovery, whereas our statute does not. And we are actuated by another reason. It must be borne in mind that in the nature of things the suffering caused by death to survivors is not alike in all cases. We can readily see that a mother would grieve very deeply. But it has been recognized by the courts that, except, perhaps, under exceptional circumstances, collateral or remoter relatives should not be considered, or considered only to a limited extent, in this connection. Burk v. R. R. Co., supra; St. Louis etc. Ry. Co. v. Hutchison, 117 Okl. 190, 245 Pac. 891; Holton v. Daly, 106 Ill. 131. In Kelley v. Irr. & O. Co., 30 Ida. 778, 168 Pac. 1076, 1078, the court said:

"A rule which bars collateral heirs, in all cases, from recovering damages for loss of society and companionship does not strike us as just or sensible, and we find no basis for such a rule in the statute. In the words of the statute, such damages should be allowed as under all the circumstances of the case may be just. Each case must stand on its particular facts. Under the usual conditions of life it is not probable that in the ordinary case a collateral heir can show any substantial damages because of loss of society or companionship. However, if in any case a collateral heir can prove there have been such close companionship and relations between himself and the deceasd that he has suffered a substantial loss from the termination of that companionship, then the jury may be allowed to consider that fact as an element of damages in a similar way, although perhaps not generally to the same degree, as it would be considered if the relationship had been in the direct line instead of collateral. Of course, no such companionship is implied from the mere relationship; it must be proved to have existed. If such fact be proved, then it may be considered as an element of damages in all cases which come under the statute."

Now Section 5561, supra, provides that the amount recovered shall be divided "in the proportions provided by law, in relation to the distribution of personal estates left by persons dying intestate." Our statute of descent and distribution (Sec. 7002, Wyo. C. S. 1920) provides that where a man leaves no wife or children, as in the case at bar, his estate shall be equally divided between the father, mother, brothers, and sisters, and Section 7004, Wyo. C. S. 1920 states that collateral relatives of half blood shall inherit one half the measure of collateral relatives of the whole blood. In the instant case, the decedent left surviving him his mother, two brothers, one sister and one half sister. So that, if anything were allowed in this case for the mental suffering of the mother, she would actually receive only a fraction over 22 per cent thereof, whereas the remainder would go to collateral relatives, who, probably, could not be said to be entitled to any damages whatever on that account. That would be an absurdity. We recognize the fact that the situation with reference to the other elements of damages is or may be similar. A note on the subject is found in 14 A. L. R. 520. But the situation would not be quite the same, for protection, attention, and support not extended by one child, by reason of death, might have to be extended by the remaining children. In any event, the only way by which such incongruous situation could be avoided, would be by adopting the Arizona rule, which, as already stated, we do not think we ought to do. So that the only alternative is to limit the incongruous situation.

5. Instruction No. 13, of which complaint is made by appellant, must be construed in the light of what has already been said. That instruction is as follows:

"You are instructed that if you find for the plaintiff, it is your duty in assessing the damages to award plaintiff such sum as you find from the evidence is fair and just, taking into consideration his age, habits, health, mental and physical capacity and ability, his probable life expectancy,

and his probable net earnings; these elements should be reduced to a money value, and should not exceed the sum of $50,000.00.''

The instruction up to the last sentence commencing with ''these elements'' is not, perhaps, strictly speaking, incorrect, for the jury in fixing the damages had, at least in connection with other proper factors, a right to take into consideration the decedent's age, habits, life expectancy and future earnings. But the added clause reading ''these elements should be reduced to a money value and should not exceed the sum of $50,000'' means, or may be construed to mean, that the earnings, determined as stated in the instruction, and reduced to a money value, constituted and should constitute the damages to be allowed. That, of course, is wrong. The criterion of damages, or one of them, is not what the decedent would have earned, but the amount which the survivors probably failed, by reason of the death, to receive out of these earnings. The earnings are not an element of damages, but simply evidence to be taken into consideration, in the proper case, to determine and fix one of the elements. If the decedent had lived, but the persons for whose benefit suit is brought would not in any event have received any of his earnings, then these earnings could not be considered in determining the damages, let alone constituting the amount to be recovered. That the instruction was construed by the trial court as we have construed it, is apparent from the fact that the court refused to give the following offered instruction:

''The action is not for the purpose of recovering such damages as Robert M. Gray might have recovered if death had not ensued, nor to recover such damages as may have been suffered by his estate. If you find that plaintiff, as administratrix, is entitled to recover, you will award such damages as you shall determine fair and just to compensate the surviving mother, sister and brother of Robert M. Gray for the amount of the pecuniary loss, if any, which you may find they have respectively sustained by reason of his death.

322

In other words, the prospective value to them of the life of Robert M. Gray had he escaped death is the measure of damages adopted by the statute under which this action is brought.''

This offered instruction, so far as it goes, is a correct statement of the law, and the refusal to give it clearly shows that the court failed to recognize that the earnings of the deceased had a bearing in the case only in so far as it helped in determining as to how much the parties for whose benefit the suit was brought would have received therefrom. We think the jury interpreted the instruction as the trial judge. This was clearly error, and of such vital importance that the case must be reversed and sent back for a new trial. It is so ordered.

*Reversed and Remanded.*