R.D., individually and in his capacity as personal representative for the Estate of G.D., and further in his capacity as next friend and legal guardian of K.D., a minor child, Appellant (Plaintiff),

v.

W.H., Appellee (Defendant).

No. 93–90.

Supreme Court of Wyoming.

May 27, 1994.

George Zunker, Cheyenne, and Mitch Geller, Denver, CO, for appellant.

Julie Nye Tiedeken, Cheyenne, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

MACY, Chief Justice.

Appellant, individually, as personal representative for the decedent's estate, and as next friend and legal guardian of the minor child, appeals from the district court's order dismissing his amended complaint.

We reverse and remand.

Appellant presents the following issues for our resolution:

    I.  Whether an actor, whose action creates a condition of insanity in the mind of another, may be held liable for the death of that other person when the death itself is caused by suicide.

    II.  Whether the district court erred in dismissing the plaintiff's claims for intentional infliction of emotional distress and for negligent infliction of emotional distress.

After the decedent committed suicide, Appellant filed a complaint against Appellee and a physician. Appellee moved under W.R.C.P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief could be granted. Appellant amended his complaint, and the parties stipulated that the motion to dismiss would apply to the amended complaint.

When reviewing a W.R.C.P. 12(b)(6) dismissal, this Court accepts all facts stated in the complaint as being true and views them in the light most favorable to the plaintiff. We will sustain a W.R.C.P. 12(b)(6) dismissal only when it is certain from the face of the complaint that the plaintiff cannot assert any facts which would entitle him to relief.

*Herrig v. Herrig*, 844 P.2d 487, 490 (Wyo. 1992) (citation omitted). *See also Veile v. Board of County Commissioners of Washakie County*, 860 P.2d 1174, 1177 (Wyo.1993).

The facts stated in the amended complaint are as follows: The decedent was Appellant's wife and the mother of the minor child. Appellee was the decedent's stepfather. Appellant alleged that Appellee sexually abused the decedent throughout her childhood, adolescence, and early adulthood and that, as a result of this abuse, the decedent developed psychiatric difficulties and attempted to commit suicide on numerous occasions.

The decedent visited her mother and Appellee on September 20, 1990. During that visit, the decedent asked Appellee to provide her with a firearm for "protection." Appellee complied, and the decedent attempted to commit suicide with the gun he provided. She did not succeed because the gun jammed. Just five days later, on September 25, 1990, the decedent again visited her mother and Appellee. She asked Appellee to help her obtain a prescription for Elavil (amitriptyline hydrochloride). The decedent claimed that she had left her medication behind at her home. Although he was aware, or should have been aware, that the decedent had previously attempted to commit suicide by taking an overdose of amitriptyline hydrochloride, Appellee contacted a physician and asked him to write a prescription for the decedent. The physician wrote the prescription without meeting with or speaking to the decedent and without contacting her treating physicians. On September 27, 1990, the decedent ingested an overdose of the prescription drug. She died a few days later.

Appellant presented several claims for relief in his amended complaint against Appellee. These claims included: (1) wrongful death on the basis of Appellee's negligent actions; (2) wrongful death on the basis of Appellee's intentional acts; (3) intentional infliction of emotional distress; and (4) negligent infliction of emotional distress. The district court dismissed Appellant's amended complaint against Appellee for failure under W.R.C.P. 12(b)(6) to state a claim upon which relief could be granted. Appellant appeals from that dismissal.

## Wrongful Death

In his amended complaint, Appellant alleged that Appellee committed various wrongful actions toward the decedent and that such actions proximately caused the decedent's death by suicide. Appellee asserts that Appellant did not state a legal cause of action because the decedent's suicide was an intervening cause which did not come within and complete the line of causation from the negligent acts to the death. Appellant contends that his amended complaint did state a claim because he alleged that

"the decedent's suicide arose from the delirium or insanity created in her by [Appellee] and was either an act demonstrating the decedent's inability to realize the nature of her act and certainty or risk of harm involved, or was an act of irresistible impulse caused by her insanity which deprived her of the capacity to govern her conduct in accordance with reason."

The general rule with regard to liability for negligent actions which lead to suicide is: The decedent's intentional and voluntary act in taking his own life is an intervening cause which breaks the chain of causation and precludes a finding of liability against the tortfeasor. 22A AM.JUR.2D *Death* § 52 (1988); *Eidson v. Reproductive Health Services*, 863 S.W.2d 621, 626–27 (Mo.Ct.App. 1993); *Gilmore v. Shell Oil Company*, 613 So.2d 1272, 1276–78 (Ala.1993); *Krieg v. Massey*, 239 Mont. 469, 781 P.2d 277, 279 (1989); *Watters v. TSR, Inc.*, 904 F.2d 378, 383 (6th Cir.1990) (affirming 715 F.Supp. 819 (W.D.Ky.1989)). However, it has long been recognized that, when the tort-feasor's wrongful act causes the decedent to become insane and the decedent's insanity prevents him from realizing the nature of his act or from controlling his conduct, the suicide will

not be considered as being an intervening cause and that the tort-feasor may be held liable for the suicide. *See, e.g., Riesbeck Drug Co. v. Wray,* 111 Ind.App. 467, 39 N.E.2d 776, 780 (1942); and *Daniels v. New York, N.H. & H.R. Co.,* 183 Mass. 393, 67 N.E. 424, 426 (1903). *See also* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 44, at 310–11 (5th ed. 1984).

■ RESTATEMENT (SECOND) OF TORTS § 455 (1965) is the codification of this special causation rule. *District of Columbia v. Peters,* 527 A.2d 1269, 1275–76 (D.C.Ct.App. 1987); *Watters,* 904 F.2d at 384; *Stafford v. Neurological Medicine, Inc.,* 811 F.2d 470, 473 (8th Cir.1987); *Eidson,* 863 S.W.2d at 626–27.

Section 455 provides:

If the actor's negligent conduct so brings about the delirium or insanity of another as to make the actor liable for it, the actor is also liable for harm done by the other to himself while delirious or insane, if his delirium or insanity

(a) prevents him from realizing the nature of his act and the certainty or risk of harm involved therein, or

(b) makes it impossible for him to resist an impulse caused by his insanity which deprives him of his capacity to govern his conduct in accordance with reason.

We adopt the language of § 455 of the RESTATEMENT, *supra,* as being an exception to the general rule that suicide is an intervening cause.[1] In order for the suicide to be an intervening cause, it must have been committed voluntarily. When the decedent acts under the conditions expounded in § 455, he is not acting with volition, and his suicide, therefore, does not breach the chain of causa-

tion. *Runyon v. Reid,* 510 P.2d 943, 949 (Okl.1973); *Eidson,* 863 S.W.2d at 627.

Appellee argues that Appellant's amended complaint was deficient because the facts did not show that the decedent was acting under a sudden impulse when she killed herself. Appellee contends that the decedent's other suicide attempts and the lapse of time between obtaining the drug and committing the suicide negate a finding of sudden impulse. Whether the decedent was acting under an irresistible or uncontrollable impulse,[2] as defined by § 455 of the RESTATEMENT, *supra,* is generally a question of fact and should not be decided in the context of determining whether the complaint should be dismissed under W.R.C.P. 12(b)(6). *See generally Fuller v. Preis,* 35 N.Y.2d 425, 363 N.Y.S.2d 568, 322 N.E.2d 263, 269 (1974) (reversing 75 Misc.2d 1067, 349 N.Y.S.2d 470 (N.Y.Sup.Ct.1972).

■ We hold, however, that the impulse does not need to be sudden in order to be characterized as being an irresistible or uncontrollable impulse. 322 N.E.2d at 268. *See also* James A. Howell, Comment, *Civil Liability for Suicide: An Analysis of the Causation Issue,* 1978 ARIZ.ST.L.J. 573, 587 (1978). "In tort law, there is a recognition that one may retain the power to intend and yet be subject to an irresistible impulse." *Peters,* 527 A.2d at 1276. *See also Exxon Corporation v. Brecheen,* 526 S.W.2d 519, 524 (Tex.1975) (reversing 519 S.W.2d 170). Even "long lapses in time between commission of a wrong and a suicide by the victim do not necessarily break the causal chain." *Jamison v. Storer Broadcasting Company,* 511 F.Supp. 1286, 1292 (E.D.Mich.1981). A person may be found to have acted under an irresistible impulse even though evidence exists which indicates that he previously attempted to commit suicide or that he planned

---

1. Courts in different situations have recognized other "exceptions" to the general rule that a decedent's suicide precludes a finding of liability against a tort-feasor. For example, some institutions, such as jails or hospitals, have been found to have a special duty of care to prevent those in their custody from committing suicide. *See, e.g., McLaughlin v. Sullivan,* 123 N.H. 335, 461 A.2d 123, 125 (1983); and *Krieg,* 781 P.2d at 279. In this decision, we do not consider what other exception may apply in Wyoming to the general rule.

2. Irresistible or uncontrollable impulse tests have not been accepted in Wyoming in the worker's compensation or criminal law context. *See, e.g., Dean v. State,* 668 P.2d 639, 644–45 (Wyo.1983); and *State ex rel. Wyoming Workers' Compensation Division v. Ramsey,* 839 P.2d 936, 939–40 (Wyo. 1992). Those cases involved different legal and policy concerns and do not affect our decision in this case.

his suicide. *Fuller*, 322 N.E.2d at 268–69; *Orcutt v. Spokane County*, 58 Wash.2d 846, 364 P.2d 1102 (1961) (en banc) (holding that a jury question existed as to whether the decedent was acting under an irresistible impulse even though evidence existed of prior suicide attempts).

Appellant alleged that Appellee acted negligently toward the decedent and that Appellee's actions resulted in

the creation of a delirium or insanity in the decedent. The decedent's death occurred while delirious or insane and that delirium or insanity, created by [Appellee], prevented the decedent from realizing the nature of her actions and the certainty or risk of harm involved therein, or, made it impossible for her to resist an impulse caused by her insanity which deprived her of her capacity to govern her conduct in accordance with reason.

Under the foregoing legal principles, Appellant's amended complaint sufficiently articulated a claim for wrongful death on the basis of Appellee's negligence.

Appellant also alleged: "The sexual assaults perpetrated upon the decedent ... by [Appellee] were intentional and were extreme and outrageous conduct which caused severe emotional distress to the decedent, which in turn, was a substantial factor bringing about her suicide." Appellee contends that the general rule that suicide is an intervening cause applies when the tort-feasor acts intentionally.

The jurisdictions which have considered the question of how liability may be established for suicide which results from intentional acts have imposed different standards for recovery. Some courts have recited the general rule that suicide is an intervening cause and then, as in the negligence context, have imposed liability when the intentional act created an irresistible impulse in the decedent and the decedent took his own life while he was acting under such irresistible impulse. *See, e.g., Cauverien v. DeMetz*, 20 Misc.2d 144, 188 N.Y.S.2d 627, 631–32 (N.Y.Sup.Ct.1959); and *Hare v. City of Corinth, Mississippi*, 814 F.Supp. 1312, 1326 (N.D.Miss.1993).

Other courts have recognized that a higher degree of responsibility should be imposed upon tort-feasors whose conduct was intentional than upon those whose conduct was merely negligent. *See, e.g., Tate v. Canonica*, 180 Cal.App.2d 898, 5 Cal.Rptr. 28, 33 (1960); *see also* Victor E. Schwartz, *Civil Liability for Causing Suicide: A Synthesis of Law and Psychiatry*, 24(2) VAND.L.REV. 217, 219–20 (1971).

In *Tate*, the District Court of Appeal held:

[I]n a case where the defendant intended, by his conduct, to cause serious mental distress or serious physical suffering, and does so, and such mental distress is shown by the evidence to be "a substantial factor in bringing about" (Rest., Torts, §§ 279, 280) the suicide, a cause of action for wrongful death results, whether the suicide was committed in a state of insanity, or in response to an irresistible impulse, or not. This rule would not apply where the *act* of the defendant was intentionally done, but there was no intent to cause injury. It is applicable only where the actor *intended to cause injury*, and the injury is a substantial factor in bringing about the suicide, i.e., is really a cause, in fact, of the suicide. This does not mean that, in every case where the actor intentionally causes serious mental distress or physical suffering, and this is followed by suicide, the actor is necessarily liable for the suicide. The mental distress or physical suffering may not be, in the particular case, as a matter of fact, a substantial factor in bringing about the suicide.

5 Cal.Rptr. at 36 (emphasis in original). *See also Rowe v. Marder*, 750 F.Supp. 718, 723–24 (W.D.Pa.1990), *judgment aff'd*, 935 F.2d 1282 (3d Cir.1991).

A number of variations of the substantial factor test seem to exist. In *State ex rel. Richardson v. Edgeworth*, 214 So.2d 579 (Miss.1968), the court found that the plaintiff's evidence established that the decedent was acting under an irresistible impulse when he took his life and that the intentional tort committed by the defendant was a substantial factor in causing the suicide. 214 So.2d at 586–87 (holding that, because evidence was present indicating that the dece-

dent acted under an irresistible impulse, it was not necessary to decide whether the *Tate* standard applied). In *Mayer v. Town of Hampton*, 127 N.H. 81, 497 A.2d 1206 (1985), the New Hampshire Supreme Court held:

> [I]n order for a cause of action for wrongful death by suicide to lie for intentional torts, the plaintiff must demonstrate that the tort[-]feasor, by extreme and outrageous conduct, intentionally wronged a victim and that this intentional conduct caused severe emotional distress in his victim which was a substantial factor in bringing about the suicide of the victim.

497 A.2d at 1211.

■ In *Tate*, the tortious conduct charged was that the defendant " 'intentionally made threats, statements and accusations against said deceased for the purpose of harassing, embarrassing, and humiliating him in the presence of friends, relatives and business associates.' " 5 Cal.Rptr. at 30–31. The allegation of causation was that the defendant's conduct resulted in the deceased becoming " 'physically and mentally disturbed,' " leading ultimately to the deceased's suicide. 5 Cal.Rptr. at 31. We choose not only to adopt the substantial factor test articulated in *Tate* but also to extend the rule of that case to encompass a situation in which an actor will be liable when he intentionally commits a tort, in this case sexual assault, and the commission of that tort causes an emotional or psychiatric illness which is a substantial factor in bringing about the suicide of the victim. We hold that the actor will be liable for the result even though he does not intend to cause the emotional or psychiatric illness. The substantial factor rule recognizes that a higher degree of responsibility exists for those who commit intentional acts than for those who merely act negligently. *See Leithead v. American Colloid Company*, 721 P.2d 1059, 1065 (Wyo.1986).

Under this rule, Appellant's amended complaint sufficiently stated a claim for wrongful death on the basis of Appellee's intentional acts against the decedent.

## Emotional Distress

Appellant's amended complaint included claims for intentional infliction of emotional distress and negligent infliction of emotional distress. Appellee challenged those claims for failure to state a claim upon which relief could be granted. Appellee argued to the trial court that Appellant could not recover under these theories because mental suffering of the survivors caused by the death was not an element of damages for wrongful death under the ruling of *Coliseum Motor Co. v. Hester*, 43 Wyo. 298, 3 P.2d 105 (1931). The trial court dismissed Appellant's amended complaint "based upon the authority cited in [Appellee's] Brief in support of his Motion [to Dismiss]."

■ We hold that Appellant's claims for negligent infliction of emotional distress and intentional infliction of emotional distress were not barred by *Coliseum Motor Co.* The intentional-infliction-of-emotional-distress and negligent-infliction-of-emotional-distress torts were not recognized in Wyoming until long after *Coliseum Motor Co.* had been decided. *Leithead*, 721 P.2d at 1066; *Gates v. Richardson*, 719 P.2d 193, 198 (Wyo.1986). The Court held in *Coliseum Motor Co.* that the survivors could not recover for their mental suffering which had been caused by the decedent's death. 43 Wyo. at 318–19, 3 P.2d 105. The Court believed that it would be overly difficult to calculate the mental damages, it was concerned about the potential for excessive verdicts, and it was concerned with the possibility of feigned grief. 43 Wyo. at 314–19, 3 P.2d 105. This Court overcame those concerns when it adopted the mental distress torts.

■ Also, damages claimed for negligent or intentional infliction of emotional distress are personal to the plaintiffs and do not result from the decedent's death alone. In an intentional-infliction-of-emotional-distress claim, the plaintiff must prove that the defendant's conduct was extreme and outrageous and that the defendant intentionally or recklessly caused the plaintiff to suffer severe emotional harm. *Leithead*, 721 P.2d at 1065–66. In a negligent-infliction-of-emotional-distress claim, the plaintiff must prove that he suffered emotional distress as a result of

observing the infliction of a serious bodily injury to or the death of a relative. *Gates*, 719 P.2d at 200–01. In other words, the "essence of the tort is the shock caused by the perception of an especially horrendous event." 719 P.2d at 199. The two mental distress torts provide for recovery in special circumstances where plaintiffs suffer from extreme shocks. They do not provide for recovery from the typical type of grief suffered by all who lose a loved one.

In a wrongful death action, the statutory claimants are entitled to recover for the loss of care, comfort, and society of the decedent as a result of the death. Emotional distress is not a derivative of any of these elements; emotional distress generally occurs when a plaintiff witnesses the infliction of a relative's injury which has been caused by a negligent, intentional, or reckless act regardless of whether the injury results in death.

Appellant's emotional distress claims were pleaded separately from the wrongful death claims, and they were drafted in their generally accepted elements. *See Leithead*, 721 P.2d at 1064; and *Gates*, 719 P.2d at 200–01. The claims clearly were not parasitic to the wrongful death claims even though they arose out of the same circumstances.

Appellee also argues that the emotional distress claims were insufficient because Appellant did not properly allege that he and the minor child were "present" as was required by both torts. Concerning the intentional-infliction-of-emotional-distress claim, Appellant alleged that Appellee committed outrageous conduct by providing a loaded weapon to the decedent and then in assisting her to obtain the prescription drug while knowing of her psychiatric condition and suicidal tendencies. Appellant alleged that Appellee's actions were intentional and reckless and that Appellee knew or should have known that his actions would cause severe emotional distress to Appellant and the minor child. He also stated that he and the minor child had suffered severe emotional distress. In his intentional-infliction-of-emotional-distress claim, Appellant did not allege that he and the minor child were "present." However, elsewhere in the complaint, he

stated that they had witnessed the immediate aftermath of the decedent's overdose.

Although Appellant attempted to characterize his claim as being a first-party intentional-infliction-of-emotional-distress claim, the gist of his amended complaint was that Appellee's actions, which were directed at the decedent, caused Appellant and the minor child to suffer severe emotional distress. This claim was for third-party intentional infliction of emotional distress. This Court has never expressly addressed a claim for third-party intentional infliction of emotional distress. In *Leithead*, we recognized a party's right to bring an action for intentional infliction of emotional distress which was directed toward him. We adopted RESTATEMENT (SECOND) OF TORTS § 46(1) (1965) as the standard to be used for such actions. *Leithead*, 721 P.2d at 1065–66. Third-party actions are recognized in RESTATEMENT (SECOND) OF TORTS § 46(2) (1965).

We allow claims for emotional distress which are caused by negligent acts directed toward a third person under the negligent-infliction-of-emotional-distress tort. *Gates*, 719 P.2d 193. We see no reason to deny such actions in intentional-infliction-of-emotional-distress claims. "If a person can recover damages for negligently inflicted mental harm, then without question he should have a cause of action for intentional harm." *Leithead*, 721 P.2d at 1065. It appears that, although we did not do so expressly, we intended in *Leithead* to adopt § 46 of the RESTATEMENT, *supra*, in its entirety: "We join the vast majority of states and hold that the tort of intentional infliction of emotional distress, as reflected in § 46 of the Restatement, Second, Torts, is a valid cause of action in Wyoming." 721 P.2d at 1066. In order to clarify the law, we hereby expressly adopt § 46(2) of the RESTATEMENT, *supra*, as being the basis for third-party intentional-infliction-of-emotional-distress claims in Wyoming.

Section 46(2) provides:

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

(b) to any other person who is present at the time, if such distress results in bodily harm.

Under the RESTATEMENT provision, the plaintiff must be "present at the time" in order to establish liability. Most cases interpreting the presence requirement have held that "present at the time" means that the plaintiff must be present when the outrageous conduct occurs. *See, e.g., Lund v. Caple,* 100 Wash.2d 739, 675 P.2d 226, 229 (1984) (en banc); and *Bradshaw v. Nicolay,* 765 P.2d 630, 632 (Colo.Ct.App.1988). *See also* Annotation, *Immediacy of Observation of Injury as Affecting Right to Recover Damages for Shock or Mental Anguish from Witnessing Injury to Another,* 5 A.L.R. 4th 833, at § 1[a] (1981).

In this case, Appellant did not allege that he and the minor child were present when Appellee gave the firearm to the decedent or when he helped her obtain the drug. However, he did allege that they had witnessed the immediate aftermath of the decedent's overdose on the drug.

The drafters of § 46(2) of the RESTATEMENT, *supra,* have given us some guidance in how the presence requirement should be applied. Comment *l* provides in pertinent part:

*l. Conduct directed at a third person.* Where the extreme and outrageous conduct is directed at a third person, as where, for example, a husband is murdered in the presence of his wife, the actor may know that it is substantially certain, or at least highly probable, that it will cause severe emotional distress to the plaintiff. In such cases the rule of this Section applies. *The cases thus far decided, however, have limited such liability to plaintiffs who were present at the time, as distinguished from those who discover later what has occurred.* The limitation may be justified by the practical necessity of drawing the line somewhere, since the number of persons who may suffer emotional distress at the news of an assassination of the President is virtually unlimited, and the

distress of a woman who is informed of her husband's murder ten years afterward may lack the guarantee of genuineness which her presence on the spot would afford. *The Caveat is intended, however, to leave open the possibility of situations in which presence at the time may not be required.*

(Emphasis added.) The caveat referred to in comment *l* states:

The Institute expresses no opinion as to whether there may not be other circumstances under which the actor may be subject to liability for the intentional or reckless infliction of emotional distress.

Courts have recognized that, pursuant to comment *l* and the caveat, special factual circumstances may exist where presence at the time the outrageous conduct occurs will not be required. *See, e.g., H.L.O. by L.E.O. v. Hossle,* 381 N.W.2d 641 (Iowa 1986); and *Nancy P. v. D'Amato,* 401 Mass. 516, 517 N.E.2d 824, 827–28 (1988). In *Foster v. Trentham's Inc.,* 458 F.Supp. 1382 (E.D.Tenn.1978), the court refused to dismiss the wife's complaint for intentional infliction of emotional distress under § 46(2) even though the wife may not have been present during the malicious prosecution of her husband. The court considered the fact that the outrageous conduct had occurred in the wife's home and the continuing nature of the outrageous conduct in holding that the presence requirement had been satisfied for the purposes of a motion to dismiss. 458 F.Supp. at 1384.

We believe that it is generally a better practice to limit recovery for intentional infliction of emotional distress to plaintiffs who were present when the outrageous conduct occurred. However, this case presents a factual situation which demands special consideration regarding the presence requirement.

We hold that the facts of this case place it within the narrow exception to the general rule that a plaintiff must be present when the outrageous conduct occurs in order to recover for intentional infliction of emotional distress directed at a third person. Appellant and the minor child were present

in the immediate aftermath of the tragic results of Appellee's outrageous conduct, and the suicide was the final result of a continuing course of conduct instigated by Appellee. Accordingly, Appellant sufficiently pleaded a cause of action for intentional infliction of emotional distress, and his claim should not have been dismissed.

■ Appellant set forth a claim in his amended complaint for negligent infliction of emotional distress. The trial court also dismissed this claim. Appellee argues that the trial court's decision to dismiss Appellant's claim for negligent infliction of emotional distress should be affirmed because Appellant did not allege that he and the minor child had witnessed the negligent acts. *Gates* defined the parameters of the negligent-infliction-of-emotional-distress tort. One of the limitations placed on the tort was that a plaintiff may recover only "if he observed the infliction of serious bodily harm or death, or if he observed the serious bodily harm or death shortly after its occurrence but without material change in the condition and location of the victim." 719 P.2d at 199.

Although Appellant did not specify the alleged negligent acts which resulted in his and the minor child's emotional distress, the face of the amended complaint supplied a number of possibilities including the sexual abuse and aiding the decedent in obtaining the means to commit suicide. Appellant did not allege that he and the minor child had witnessed any of these negligent events, and Appellee argues that this was fatal to Appellant's claim for negligent infliction of emotional distress. We disagree.

Under the language of *Gates,* the plaintiff must have observed the infliction of serious bodily harm or death, or its immediate aftermath. *Id. See also Thunder Hawk by and through Jensen v. Union Pacific Railroad Company,* 844 P.2d 1045, 1052 (Wyo.1992). In accident cases, as in *Gates,* the negligent act and the infliction of serious bodily injury or death will generally occur simultaneously. However, there can be times when the negligent act will be removed in time from the actual infliction of serious bodily injury or death.

For example, in *Sims v. General Motors Corporation,* 751 P.2d 357 (Wyo.1988), the alleged negligent act was the improper design, et cetera, of a seat belt which resulted in a person being trapped in a burning car. 751 P.2d at 359. In that case, the negligent act obviously occurred prior to the infliction of bodily injury. This Court affirmed the district court's directed verdict in favor of the defendant because the plaintiff failed to prove that the defendant's negligence proximately caused her injuries. 751 P.2d at 366. However, the decision implies that the plaintiff had satisfied the presence requirement by witnessing the infliction of the serious bodily injury. The Court reiterated the limitations on the negligent-infliction-of-emotional-distress tort, including the presence requirement, and then stated: " '*Once these conditions are satisfied, the case can go forward under normal negligence principles. The defendant must have been negligent and his negligence must be the proximate cause of the plaintiff's mental injuries.*' " 751 P.2d at 366 (quoting *Gates,* 719 P.2d at 200–01) (emphasis in original and some emphasis omitted). Since the Court decided the case under normal negligence principles, it may be assumed that the limitations on the tort, including the presence requirement, were met even though the plaintiff did not observe the occurrence of the negligent act.

Cases from other jurisdictions support our ruling. *Pearsall v. Emhart Industries, Inc.,* 599 F.Supp. 207 (E.D.Pa.1984), involved a smoke detector malfunction. A federal district court in Pennsylvania held that the presence requirement for negligent infliction of emotional distress was satisfied when the plaintiff witnessed the bodies of her family after they had been pulled from the burning house. 599 F.Supp. at 212. The plaintiff did not allege that she had witnessed the defendant improperly manufacturing the smoke detector. In *McCarthy v. City of Cleveland Heights,* 65 Ohio App.3d 216, 583 N.E.2d 981 (1989), personnel at a jail left a prisoner unattended, and the prisoner committed suicide. 583 N.E.2d at 982. The court held that the plaintiffs could not recover for negligent infliction of emotional distress because they did not observe the suicide being committed. 583 N.E.2d at 983–84. The court

did not indicate that the plaintiffs were required to have witnessed the jailer's negligent acts.

In *Bloom v. DuBois Regional Medical Center*, 409 Pa.Super. 83, 597 A.2d 671 (1991), a hospital, a hospital administrator, and a psychiatrist were accused of being negligent in caring for a suicidal patient. 597 A.2d at 673–74. The patient's husband claimed negligent infliction of emotional distress after he found his wife in her hospital room hanging by a shoestring around her neck. *Id.* The court ruled that the husband's claim should be dismissed because he did not witness the defendants' negligent acts; i.e., he did not witness a traumatic infliction of injury on his wife by the defendants. 597 A.2d at 683. We disagree with the *Bloom* decision. The Pennsylvania Superior Court drew an artificial line which defies reason. Instead, we agree with the concurring and dissenting judge who wrote:

> If one were to follow the majority's reasoning, Mr. Bloom's mere presence when staffing and supervisory decisions were made would allow him to recover for negligent infliction of emotional distress, while viewing his wife hanging by a shoestring around her neck would not.... Only when Mr. Bloom encountered his wife's hanging body did he suffer the emotional distress for which he now seeks recovery and it is illogical to hold that observation of these negligent acts and omissions of defendants is the necessary element to a finding for Mr. Bloom.

597 A.2d at 684 (Del Sole, J., concurring and dissenting).

■ We hold that a plaintiff is "present" for the purposes of establishing a negligent-infliction-of-emotional-distress claim when he witnesses the infliction of a serious bodily injury or death, or its immediate aftermath, regardless of whether he observed the negligent act happening. Our decision today supports the underlying rationale for the negligent-infliction-of-emotional-distress tort. "The essence of the tort is the shock caused by the perception of an especially horrendous event." *Gates,* 719 P.2d at 199. In this case, the horrendous event was the suicide.

Appellant's amended complaint sufficiently alleged that he and the minor child had witnessed the immediate aftermath of the decedent's suicide. The district court should not have dismissed the amended complaint for failure to state a claim.

Reversed and remanded.

CARDINE, Justice, specially concurring.

My problem with the court's opinion is with the following sentence on page 31 referring to *Coliseum Motor Co. v. Hester,* 43 Wyo. 298, 3 P.2d 105 (1931):

> "This Court overcame those concerns when it adopted the mental distress torts."

If "those concerns" refer to the "potential for excess verdicts" and the "possibility of feigned grief," my position is that the court did not "[overcome] those concerns." The court carved out an exception to the general rule of *Coliseum Motor Co.* that no recovery may be had for mental suffering and grief following the death of another by allowing recovery where plaintiff either is present and views the incident causing injury or death or comes upon it immediately thereafter. Absent this or the special circumstances of this case, there still can be no recovery for grief or mental suffering resulting from the death of another as expressed in *Coliseum Motor Co.*