Charles T. **WOODBURY**, as personal representative of Michael J. Woodbury, deceased, and as administrator of the Estate of Michael J. Woodbury, deceased, and on behalf of Charles T. Woodbury, individually, Nancy Grosshart, and on behalf of Charles T. Woodbury, as guardian and guardian ad litem of Joshua R. Woodbury, a minor, Appellant (Plaintiff),

v.

Thomas **NICHOLS**, Appellee (Defendant).

No. 89–257.

Supreme Court of Wyoming.

Sept. 13, 1990.

---

7. Apparently there is ongoing audit that may    affect the amount of refund due Amoco.

Daniel M. Hesse (argued) of Meyer & Williams, Jackson, for appellant.

Ford T. Bussart (argued), of Greenhalgh, Bussart, West & Rossetti, Rock Springs, and Lisa A. Botham, Green River, for appellee.

Before CARDINE, C.J.*, and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Justice.

Charles T. Woodbury (father), Nancy Grosshart (mother), and Joshua R. Woodbury (brother), appellants (Woodburys), sued Thomas Nichols to recover damages for the wrongful death of Michael J. Woodbury. The jury found Thomas Nichols, appellee (Nichols), 55 percent negligent in causing the death of Michael J. Woodbury. However, the jury found that the Woodbury damages were $0.00 (zero). The Woodburys challenge the verdict and the judgment entered thereon asserting that such damages are inadequate as a matter of law. The Woodburys also contend they were entitled to a directed verdict on the issue of whether Nichols' negligence was willful and wanton as a matter of law.

We affirm.

Woodburys present these issues:

"If the great weight of evidence shows appellee's willful and wanton misconduct was the proximate cause of appellants' decedent's death, and that appellants suffered damages thereby, is an award of zero damages inadequate as a matter of law?

"If reasonable minds could not differ, and if but one inference could be drawn from the evidence regarding appellee's willful and wanton misconduct, were appellants entitled to a directed verdict on that issue?"

Nichols argues in counterpoint that the jury's award of zero damages is adequately supported by the evidence and that the district court properly denied the Woodburys' motion for a directed verdict on the issue of his willful and wanton negligence.

Michael Woodbury, 18 years old at the time, was killed in this tragic one-car accident on the night of February 16–17, 1987. He and his friend Thomas Nichols, who was 19 years old, began drinking beer, peppermint schnapps and whiskey at about 8:30 p.m. the evening of the accident. At about 11:00 p.m., the boys decided to go for a ride in Michael Woodbury's car. Michael gave the keys to Nichols and suggested that he drive. Nichols drove the car up a dirt lane to U.S. Highway 30. Once on the highway, he was driving the car at a speed which may have been as high as 134 miles per hour. The drive did not last long. Nichols lost control of the car at about 11:10 p.m. It went off the roadway; skidded across a county road, shearing off a stop sign; went back onto the roadway for a short distance and then back into the ditch; and rolled one and one-half times, finally coming to rest on its roof against the highway right-of-way fence approximately 1,000 feet from the point where the car first went off the roadway. Nichols was not seriously injured in the accident, but Michael was trapped in the car upside down and his neck was broken by the impact. The highway patrolman who investigated the accident ascertained immediately

that his injuries were very serious. Michael was removed from the car by firemen. EMT's were at the scene very shortly after the accident. Michael was pronounced dead several hours later at an Evanston hospital.

The Woodburys sought damages for the loss of companionship, society and comfort both past (from the occurrence of his death until the date of trial) and future for the wrongful death of Michael Woodbury. The jury found that neither boy had been willfully and wantonly negligent, but that both had been negligent, attributing 55% of the negligence to Nichols and 45% to Michael Woodbury, and that the three plaintiffs had sustained zero damages. Woodburys contend here that the damage award is unconscionable and is inadequate as a matter of law.

█ The assessment of damages is an issue for jury determination when a case is tried to a jury. We, therefore, begin our analysis with our standard for reviewing fact findings of a jury:

> "We assume the evidence in favor of the successful party to be true, leaving out of consideration entirely the evidence in conflict, and assigning every favorable inference to the evidence of the successful party that can be reasonably and fairly drawn from it. In addition, when reviewing a jury verdict, we leave to the jury the duty of ascertaining the facts, reconciling conflicts therein and drawing its own inferences if more than one inference is permissible. Also, when the facts permit the drawing of more than one inference, then it is for the jury to choose which one will be utilized and, if supported by substantial evidence, the jury's choice will be held by us to be conclusive." *Reese v. Dow Chemical Co.*, 728 P.2d 1118, 1120 (Wyo.1986) (quoting from *Crown Cork & Seal Co., Inc. v. Admiral Beverage Corp.*, 638 P.2d 1272, 1274–75 (Wyo.1982)).

The *Reese* case deals with an issue quite similar to that in this case. In *Reese*, the plaintiff sought damages for wrongful termination of his employment. The jury found that Dow Chemical was negligent in performing a contractual duty and attributed 60% of the negligence to Dow Chemical and 40% of it to Reese. However, the jury found that Reese's damages were zero. In that case, we were able to reconcile the jury's findings and held that the evidence was sufficient to support the jury's determination. *See also Canyon View Ranch v. Basin Electric Power Corp.*, 628 P.2d 530, 541 (Wyo.1981). We note that the proposition contended by Woodburys is not without support in the case law and commentaries. *Carter v. Chicago & Illinois Midland Railway*, 168 Ill.App.3d 652, 119 Ill.Dec. 194, 522 N.E.2d 856 (1988); *Putter v. Bowman*, 7 Kan. App.2d 323, 641 P.2d 411, 46 A.L.R.4th 211 (1982); *Toole v. Toole*, 260 S.C. 235, 195 S.E.2d 389 (1973); and *see* Annotation, *Excessiveness or Adequacy of Damages Awarded for Parents' Noneconomic Loss Caused by Personal Injury or Death of Child*, 61 A.L.R.4th 413, § 10(e) (1988). However, our analysis of these authorities convinces us that appellate courts should interfere with such a verdict only where the evidence of damages is uncontradicted.

█ In this case, the evidence of damage is conflicting. Although each of the family members testified to the essentially loving and close relationship that existed between them all, on cross-examination it was revealed: that the father had virtually never paid child support to Michael's mother for the support of Michael as required by a divorce decree; that Michael was sent by his mother to Wyoming to live with his father and complete high school because she was unable to keep him in school and out of trouble; and that there had been only infrequent contact between Michael and his brother during the years just preceding Michael's death. In addition, each of the family members testified that money was not the object of the suit, but rather they had brought suit to put out a message about the incredible price their son and brother had paid as a result of drinking and driving. Counsel for the Woodburys made similar statements in his argument to the jury. The jury, at least in part, may have taken them at their word. Moreover, the testimony at trial included evidence that

Nichols had been subjected to criminal proceedings arising out of this accident, that he was convicted in those criminal proceedings, and that as a result of the criminal proceedings he was paying restitution to the Woodburys. Finally, the evidence disclosed that these two boys were the best of friends and Nichols suffered greatly, and continues to suffer greatly, the horror of having caused his best friend's death. In light of all these unusual circumstances, the testimony showing lack of loss of companionship, society and comfort, and appellant's admission that suit was brought to send a message about drinking and driving, the conscience of this court is not shocked nor can we conclude that the zero damage award was inadequate as a matter of law. *See Caterpillar Tractor Co. v. Donahue,* 674 P.2d 1276, 1289 (Wyo.1983).

The Woodburys also contend that the district court should have directed a verdict in their favor on the issue of willful and wanton negligence. The district court refused to direct the verdict or to grant post-verdict relief. Woodburys claim the evidence which showed Nichols had a high blood alcohol content and was driving at 134 miles per hour establishes the existence of willful and wanton misconduct on his part. Our precedents are clear that, except for the most unusual of circumstances, the trial court should, as was done in this case, present the question of willful and wanton misconduct to the jury. *Danculovich v. Brown,* 593 P.2d 187, 191 (Wyo. 1979); *Krahn v. LaMeres,* 483 P.2d 522, 525–26 (Wyo.1971); *Severin v. Hayes,* 372 P.2d 1017, 1020 (Wyo.1962); *Meyer v. Culley,* 69 Wyo. 285, 241 P.2d 87, 96 (1952); and *see* Annotation, *Speed, Alone or in Connection with Other Circumstances, as Gross Negligence, Wantonness, Recklessness, or the Like, under Automobile Guest Statute,* 6 A.L.R.3d 769 (1966). The tragedy of young people drinking and driving—and dying—on our highways is repeated over and over again. The legislature has reacted to this problem in many ways: harsher penalties such as heavier fines, loss of driving privileges, and jail sentences. Vehicular homicide is now a crime of such magnitude as to serve as an effectual deterrent. Enforcement of the laws governing driving while under the influence of intoxicants has been enhanced. And, educational programs to alert young people to the devastating numbers of deaths and maiming injuries which result from drinking and driving are universally a part of school curricula and make frequent appearances in public fora, *e.g.,* magazines, newspapers, television, and motion pictures. Michael Woodbury was a minor and Nichols an adult, but there was only a matter of a few months' difference in their ages. The jury might have considered that here was yet another case where young people were playing out the tragedy of drinking and driving, but that neither was acting with a state of mind that could be considered to have an element of an intent to do harm to one another. We can think of no substitute for the deliberation of a jury to unravel the virtually irreducible question of whether such cases as this are accompanied by willfulness and wantonness. We continue to hold that the question is one for the jury.

Affirmed.