2002 WY 119

**Clark Tyler KNOWLES, as Personal Representative for the Estate of Lynn Rae Knowles, deceased, Appellant (Plaintiff),**

v.

**Debora Eileen CORKILL,[1] Appellee (Defendant).**

**Debora Eileen Corkill, Appellant (Defendant),**

v.

**Clark Tyler Knowles, as Personal Representative of the Estate of Lynn Rae Knowles, deceased, Appellee (Plaintiff).**

**Nos. 00–254, 00–255.**

Supreme Court of Wyoming.

Aug. 9, 2002.

---

1. While this appeal was docketed as spelling "Corkill" with an "h," the record is unclear concerning the correct spelling; therefore, to be consistent with our prior case, *Corkill v. Knowles,* 955 P.2d 438 (Wyo.1998), we are omitting the "h."

Cameron S. Walker of Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming, Representing Clark Tyler Knowles, Personal Representative for the Estate of Lynn Rae Knowles, Deceased.

John I. Henley of Vlastos, Brooks, Henley & Drell, P.C., Casper, Wyoming, Representing Debora Eileen Corkill.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] This is a wrongful death action that was decided after a jury trial. Although the alleged tortfeasor, Debora Eileen Corkill (Corkill), was apportioned 52% of the fault for the accident resulting in Lynn Rae Knowles' death, no monetary damages were awarded. In appeal number 00–254, Lynn's father, Clark Tyler Knowles (Knowles), acting in his capacity as the personal representative appeals certain evidentiary rulings made during trial and the denial of a motion for a new trial based upon an inconsistent verdict. In appeal number 00–255, Corkill appeals an evidentiary ruling that potentially

* Chief Justice at time of oral argument

affected the apportionment of fault. We find no error in the holdings of the trial court as alleged in appeal number 00–254. Because no monetary damages were awarded, appeal number 00–255 is dismissed as moot.

## ISSUES

[¶ 2] Knowles, as appellant in appeal number 00–254, presents the following issues:

A. Did the District Court err when it refused to admit evidence of the effects of their mother's disappearance and death upon Cassandra Ulmer and Chad Ulmer?

B. Did the District Court err in refusing to admit evidence of counseling, and the sense of loss and abandonment experienced by Chad and Cassandra Ulmer as a result of their mother's disappearance and death?

C. Did the District Court err in refusing to admit evidence of emotional distress of Lynn Knowles' survivors?

D. Did the District Court err in overruling plaintiff's objection to an inconsistent verdict for failure to award damages?

E. Did the District Court err in denying plaintiff's motion for a new trial?

Appellees restate the issues as:

1. The case law, principles of statutory construction, and logic, all support the trial court's application of the Wyoming Wrongful Death statute.

2. The testimony of Dr. Shilling was irrelevant, without foundation, and speculative; the trial court appropriately exercised its discretion in limiting her testimony.

3. The jury applied both the law and the facts of the case in determining that the plaintiff, Clark Knowles, who sought reimbursement for disinterment and a funeral service, was not entitled to the same.

In the cross-appeal, appeal number 00–255, appellant Corkill challenges the introduction

of certain evidence relating to her alleged blood alcohol level at the time of the accident.

## FACTS[2]

[¶ 3]   Lynn Knowles, the decedent, grew up in Iowa. She married Randy Ulmer shortly after her eighteenth birthday in 1977. Lynn and Randy had two children: Cassandra, born in 1977; and Chad, born in 1978. At Lynn's instigation, Lynn and Randy separated in August 1979 and were divorced in January 1980. Originally upon their separation, Lynn had physical custody of the children. A strike occurred at Randy's workplace so he was able to help take care of the kids during the day. In December 1979, Randy got a new job and was no longer able to help care for the children. Within a couple of weeks, just before Christmas 1979, Lynn asked Randy to take physical custody of the children. He agreed to take the children, and Lynn never had physical custody of the children after that time.

[¶ 4]   Although Randy had physical custody of the children at the time of the divorce in January 1980, the divorce decree granted legal custody of the children to Lynn. That arrangement, however, did not last long. In March 1980, Lynn asked Randy to assume legal custody of the children because she was thinking about joining the Navy. Randy assumed legal custody, but Lynn never did enlist. Nor did she ever attempt to regain legal or physical custody of the children. Over the course of the next several months, she saw the children only infrequently. She never paid any child support, nor was she required to under the divorce decree or custody agreement.

[¶ 5]   In the fall of 1980, Lynn left her hometown to go to college. She went to Iowa City and stayed with her brother briefly, then briefly tried the college dorms, which she did not like, then lived with a female roommate off-campus. She placed at most two phone calls to Randy after she left her hometown. During one of these calls Lynn informed Randy that she was going to go to another school, perhaps in Cedar Rapids, but

she did not give any more information. That was the last communication Randy had with Lynn. On October 31, 1980, Lynn placed a phone call to her sister's house, stating that she was in San Jose. That was the last contact any of her family ever had with Lynn. Eventually, around October or November 1980, Randy received a phone call from a truck stop. Lynn had abandoned her automobile (still registered in his name) in the parking lot of the truck stop. The car had some of her clothes in it. Lynn's family picked up the car.

[¶ 6]   In the early morning hours of November 2, 1980, Lynn was struck and killed by a vehicle driven by Corkill in Casper. It is alleged that Corkill was operating the vehicle under the influence of alcohol. Corkill fled the scene of the accident without rendering aid to the victim or reporting the incident to authorities. Investigators and police officers were able to identify Corkill as the driver because pieces of her vehicle's grill were left on the highway when she struck the decedent. Corkill was cited for leaving the scene of an accident involving injury or death.

[¶ 7]   Authorities were unable to identify Lynn after the accident. Her purse and her wallet were missing, and she carried no other form of identification. For the next fourteen years Lynn's family did not know what had happened to her. Her two children thought she had abandoned them. Knowles hired a private investigator to find his daughter, but to no avail. Fourteen years later, after making further inquiries, investigating dental records, and exhuming the body, authorities were finally able to identify Lynn and contact her family. On March 6, 1995, Knowles reviewed police photographs of Lynn's body, read a note found on her body, and identified the body as that of his daughter. Knowles had the body cremated, and the ashes were scattered in a family ceremony at Davenport, Iowa. In his capacity as the personal representative, Knowles filed this wrongful death action against Corkill in 1996. The case was tried to a jury in November 1999. The jury

---

**2.**   Many of the facts are taken from the opinion in the first appeal, *Corkill v. Knowles,* 955 P.2d 438   (Wyo.1998).

returned a verdict finding Corkill 52% at fault for the accident, and Lynn 48% at fault. The jury awarded no monetary damages. These timely appeals followed.

## DISCUSSION

*Damages Compensable under the Wrongful Death Act*

[¶ 8] At trial, Knowles proffered the testimony of a psychologist, Dr. Martha Shilling, regarding feelings of abandonment suffered by the children after their mother disappeared. The trial court refused to allow Dr. Shilling to testify on the subject because it determined that any damages relating to feelings of abandonment constituted mental anguish damages and as such were not compensable under Wyoming law. The question before this Court, therefore, is a question of law regarding damages compensable under Wyoming's Wrongful Death statute. We review questions of law de novo. *Gray v. Stratton Real Estate,* 2001 WY 125, ¶ 5, 36 P.3d 1127, ¶ 5 (Wyo.2001).

[¶ 9] As will be discussed below, based upon Wyoming's Wrongful Death statute and also this Court's interpretation of the statute, Wyoming has a long history of allowing damages for loss of probable future companionship, society and comfort, but does not allow damages for mental anguish. On appeal, Knowles first argues that feelings of abandonment are but a symptom of the loss of probable future companionship, society and comfort, and, therefore, the damages alleged fall within the statutory language. In the alternative, Knowles argues that, if the damages are in the nature of mental anguish, then this Court should take this opportunity to recognize damages for mental anguish as compensable under the statute.

[¶ 10] With regard to Knowles' first argument, we agree with the trial court that any feelings of abandonment suffered by the children must be categorized as mental anguish. The difference between the loss of probable future companionship, society and comfort, which is compensable, and mental anguish, which is not compensable, has been explained and summarized as follows:

[R]ecovery for the beneficiaries' mental anguish is primarily concerned, not with the benefits they have lost, but with the issue of compensating them for their harrowing experience resulting from the death of a loved one. This requires a somewhat negative approach. The fundamental question in this area of damages is what deleterious effect has the death, as such, had upon the mental tranquility and emotional well-being of the claimants? In other areas of damage, the law focuses on more positive aspects of the injury such as what would the decedent, had he lived, have contributed in terms of support, assistance, training, comfort, consortium, etc.

1 Stuart M. Speiser et al., *Recovery for Wrongful Death and Injury* § 3:38 (3rd ed.1998). Put simply, loss of probable future companionship, society and comfort entails the loss of positive benefits, while mental anguish represents an emotional reaction to the wrongful death.

[¶ 11] Knowles attempts to argue that abandonment is simply the flip side of the same coin as the loss of comfort and society—it is the obvious reaction of the children to being deprived of their mother's company. Even if we were to accept this analogy as true, the obvious result is that one side of the coin is compensable while the other is not. Compensation can be had only for the monetary value of any benefits the decedent would have bestowed upon her children had she lived. The emotional reaction to their mother's disappearance is not compensable.

[¶ 12] Dr. Shilling was allowed to testify at length. She testified that, in her opinion, the decedent eventually would have returned to her children and the children therefore suffered a loss of probable future companionship, society and comfort. The subject matter on which Dr. Shilling was not allowed to testify concerned feelings of abandonment suffered by the two children. These feelings clearly constitute mental anguish—an emotional response of the children to the disappearance of their mother. The proffered testimony was properly excluded.

[¶ 13] As for the alternative argument presented by Knowles, we decline to recognize mental anguish damages as com-

pensable in wrongful death actions. Wrongful death actions did not exist at common law; they are purely creatures of statute. *See generally Coliseum Motor Co. v. Hester,* 43 Wyo. 298, 3 P.2d 105 (1931). Thus, we must look to the appropriate statute to determine the proper measure of damages. Section 1–38–102(c) of Wyoming's statutes defines the proper measure of damages as follows:

> (c) The court or jury, as the case may be, in every such action may award such damages, pecuniary and exemplary, as shall be deemed fair and just. Every person for whose benefit such action is brought may prove his respective damages, and the court or jury may award such person that amount of damages to which it considers such person entitled, including damages for loss of probable future companionship, society and comfort.

Wyo. Stat. Ann. § 1–38–102(c) (LexisNexis 2001).

[¶ 14] The first opportunity this Court had to discuss the measure of damages available under Wyoming's Wrongful Death statute was in 1931 in *Coliseum Motor Co. v. Hester, supra.* The Wrongful Death statute in effect at the time provided for "such damages as [the jury] shall deem fair and just." *Coliseum,* 43 Wyo. at 306, 3 P.2d at 106. In *Coliseum,* Justice Blume undertook a thorough analysis of the historical evolution of wrongful death actions, the language of Wyoming's Wrongful Death statute, and the statutory language and damages allowed in various foreign jurisdictions. Justice Blume concluded that the measure of damages compensable under Wyoming's Wrongful Death statute should include loss of care, attention and society, while no recovery could be had for mental suffering. This Court has never altered this judicial interpretation of "fair and just" damages.

[¶ 15] The legislature has amended the statutory language specifically addressing damages three times since *Coliseum.* Specifically, in 1939, a sentence was added to the damages clause:

> [T]he jury shall give such damages as they shall deem fair and just. **The court or jury may consider, as elements of dam-**

**ages, the amount the survivors failed or will fail, by reason of the death, to receive out of the decedent's earnings, and further the court or jury may add, as an element of damage, a reasonable sum for the loss of the comfort, care, advice and society of the decedent.**

1939 Wyo. Sess. Laws ch. 104, § 1 (emphasis added). In 1947, the language was amended to read:

> [T]he jury shall give such damages as they shall deem fair and just. The court or jury may consider, as elements of damages, the amount the·survivors failed or will fail, by reason of the death, to receive out of the decedent's earnings, **any other pecuniary loss directly and proximately sustained by the survivors by reason of such death including funeral expenses,** and further the court or jury may add, as an element of damage, a reasonable sum for the loss of the comfort, care, advice and society of the decedent.

1947 Wyo. Sess. Laws ch. 132, § 1 (emphasis added). Finally, in 1973, the entire section was rewritten and divided into subdivisions. Subdivision (c), relating to damages, was written as follows:

> The court or jury, as the case may be, in every such action may award such damages, pecuniary and exemplary, as shall be deemed fair and just. Every person for whose benefit such action is brought, may prove his respective damages, and the court or jury may award such person that amount of damages to which it considers such person entitled, including damages for loss of probable future companionship, society and comfort.

1973 Wyo. Sess. Laws ch. 139, § 1. This language has remained the same for almost thirty years and is the exact same language found in the statute today.

[¶ 16] Knowles argues that the change in language in the 1973 amendment allows for recovery for mental anguish. Specifically, Knowles argues that the addition of the word "including" in the phrase "including damages for loss of probable future companionship, society and comfort" indicates that the legislature no longer intends to limit recovery to

only companionship, society and comfort. Knowles argues "including" means "including but not limited to" and, therefore, there is no limit on damages and damages for mental anguish must be compensable.

[¶ 17] We disagree. The language simply does not support such a sweep to the infinite. The legislature has continuously used the phrase "fair and just." As a matter of simple statutory construction, the legislature's use of the term "including" cannot be interpreted as rendering null and void the legislature's use of the term "fair and just" as a limitation on damages. *See Britton v. Bill Anselmi Pontiac–Buick–GMC, Inc.*, 786 P.2d 855, 864 (Wyo.1990) ("We construe every word, every clause and every sentence so as to avoid rendering the legislature's actions futile or absurd.").

[¶ 18] The phrase "fair and just" was clearly defined by this Court in *Coliseum* to exclude recovery for mental anguish. This judicial interpretation of the phrase has carried forward with all the amendments. *See generally Civic Ass'n of Wyoming v. Railway Motor Fuels*, 57 Wyo. 213, 238–39, 116 P.2d 236, 245 (Wyo.1941). We agree with the reasoning of the Supreme Court of Colorado which, when faced with a similar call to expand damages by means of statutory construction, stated:

> The suggestion that this Court should depart from its prior pronouncements defining the measure of damages recoverable under our wrongful death statute would do utter violence to the well-established rule of statutory construction that when a legislature repeatedly re-enacts a statute which has theretofore received a settled judicial construction, there can be no doubt as to the legislative intent, and in such circumstances it must be considered that the particular statute is re-enacted with the understanding that there be adherence by the judiciary to its former construction.

*Herbertson v. Russell*, 150 Colo. 110, 371 P.2d 422, 426 (1962). It is for the legislature to change the accepted interpretation of "fair and just" and the legislature has never expressly done so.

[¶ 19] From judicial interpretation to statute, the law in Wyoming is firmly set that no recovery is allowed in a wrongful death action for mental anguish. Because wrongful death actions, including compensable damages, are governed by statute, it is the province of the legislature to alter the existing law. We have no authority to substitute our views for those expressed by the Wyoming legislature in a duly enacted statute. The measure of damages is set by statute to exclude damages for mental anguish and we are not at liberty to extend the statutorily proscribed remedies. "[I]t is a universal rule that courts will not enlarge, stretch, expand or extend a statute to matters not falling within its express provisions. Appellant therefore asks more than we can grant." *Lo Sasso v. Braun*, 386 P.2d 630, 632 (Wyo.1963). Because damages for mental anguish are not recoverable in a wrongful death action, and because feelings of abandonment clearly constitute mental anguish, the proffered testimony was properly excluded.

*Inconsistent Verdict*

[¶ 20] As to his last two issues, in his brief Knowles simply complains that a new trial should be granted because the jury verdict was inconsistent in that the jury awarded zero monetary damages even though it found Corkill 52% at fault for the death of Lynn Knowles. We review a judge's denial of a motion for a new trial under an abuse of discretion standard. *John Q. Hammons Inc. v. Poletis*, 954 P.2d 1353, 1357 (Wyo.1998) ("[A] trial court is vested with broad discretion when ruling on a motion for new trial, and we will not overturn the court's decision except for an abuse of that discretion.").

[¶ 21] To the extent that Knowles is questioning the sufficiency of the evidence supporting the jury verdict, we give great deference to a jury verdict:

> In reviewing a sufficiency-of-the-evidence question, we assume the evidence in favor of the successful party to be true, leaving out of consideration entirely the evidence in conflict, and assigning every favorable inference to the evidence of the successful party that can be reasonably

and fairly drawn from it. *City of Rock Springs v. Police Protection Ass'n,* Wyo., 610 P.2d 975 (1980); *Brittain v. Booth,* Wyo., 601 P.2d 532 (1979). In addition, when reviewing a jury verdict, we leave to the jury the duty of ascertaining the facts, reconciling conflict therein and drawing its own inferences if more than one inference is permissible. *Neal v. Wailes,* Wyo., 346 P.2d 132, 134 (1959). Also, when the facts permit the drawing of more than one inference, then it is for the jury to choose which one will be utilized and, if supported by substantial evidence, the jury's choice will be held by us to be conclusive. *Berta v. Ford,* Wyo., 469 P.2d 12, 15 (1970); *Ford Motor Company v. Arguello,* Wyo., 382 P.2d 886 (1963).

*Crown Cork & Seal Co., Inc. v. Admiral Beverage Corp.,* 638 P.2d 1272, 1274–75 (Wyo.1982). Further:

> Juries generally have great discretion in determining the amount of damages to be awarded. *John Q. Hammons Inc.,* 954 P.2d at 1358; *see also Union Pacific Railroad Company v. Richards,* 702 P.2d 1272, 1278 (Wyo.1985). We are reluctant to interfere with a jury's verdict on damages "unless the award, by its excessiveness or inadequacy, denotes passion, prejudice, bias or some erroneous basis." *John Q. Hammons Inc.,* 954 P.2d at 1358. *See also Union Pacific Railroad Company,* 702 P.2d at 1278.

*Francis v. Pountney,* 972 P.2d 143, 146 (Wyo.1999).

[¶ 22] Knowles first points to the fact that proven and uncontested funeral expenses were presented to the jury. Knowles argues that, at the very least, the jury should have awarded these funeral expenses and its failure to do so "denotes passion, prejudice, bias or some erroneous basis." Under the unique facts of this case, however, we find no inconsistency with the jury's verdict.

[¶ 23] Evidence exists supporting the jury's determination not to award the funeral expenses. Under the statute, damages are not presumed. Each individual participating must bring and prove their respective claim for damages. *See Farmers Ins. Exchange v. Dahlheimer,* 3 P.3d 820, 823 n. 1 (Wyo.2000) ("each person entitled to participate must establish damages"). The funeral expenses were incurred by Knowles. At trial, the following exchange took place during the direct examination of Knowles:

> Q. Mr. Knowles, you're the personal representative in this lawsuit?
>
> A. Yes, sir.
>
> Q. Are any of Lynn's brothers or sisters making a claim?
>
> A. No, sir.
>
> Q. Why not?
>
> A. This is about my grandchildren, about Lynn's children.
>
> Q. How do you feel?
>
> A. The same way.

[¶ 24] It is a reasonable inference from this testimony that Knowles, as the personal representative, was presenting the lawsuit solely for the benefit of his grandchildren. The jury is entitled to take Knowles at his word and consider the request for funeral expenses abandoned. Given this testimony, there is no error to be found in the jury not awarding funeral expenses.

[¶ 25] Finally, Knowles cites the general proposition that it is "incomprehensible" that the jury would not award even nominal damages to children who have lost their mother. Knowles provides no argument except one sentence and cites no legal authority for this proposition. As such, we decline to address the issue beyond repeating the statement above that there is no presumption of damages under Wyoming's Wrongful Death statute. No damages can be awarded beyond those damages that are proven at trial.

[¶ 26] We are not unmindful of the seeming harshness of this verdict. A zero damages verdict, however, is not without precedence. As an example, this Court upheld a zero damages verdict in *Woodbury v. Nichols,* 797 P.2d 556 (Wyo.1990). In *Woodbury,* a wrongful death case, this Court determined that "appellate courts should interfere with such a verdict only where the evidence of damages is uncontradicted." *Id.* at 558. During the *Woodbury* trial, conflicting evidence was presented regarding the personal

relationship between the deceased and the individual family members involved in the action. Under the unique facts of that case, it ultimately was determined that "the conscience of this court is not shocked nor can we conclude that the zero damage award was inadequate as a matter of law." *Id.* at 559.

 [¶ 27] It is impossible to generalize the extent to which persons enjoy each other's companionship and society. The value of such highly personal relationships must be decided on a case-by-case basis. In the present case, Lynn's children were required to prove that they suffered a loss of probable future companionship, society and comfort because of the death of their mother. The facts of this case, however, show that the decedent, Lynn Knowles, had already voluntarily walked away from her children before her death. The jury was free to use their own experience and knowledge of human affairs in interpreting the evidence presented.[3] It is not "incomprehensible" for the jury to determine that, under the peculiar facts of this case, Lynn's children did not suffer any compensable loss.

[¶ 28] We find nothing in the arguments presented by Knowles to indicate that the jury's verdict on damages resulted from passion, prejudice, bias or some erroneous basis. Evidence exists supporting an award of zero damages to Knowles and to Lynn's children. No new trial is warranted.

## CONCLUSION

[¶ 29] We continue to hold that damages for mental anguish—a person's emotional response to a wrongful death—are not compensable under Wyoming's Wrongful Death statute. It is the province of the legislature, not this Court, to expand the remedies available under the statute. The proffered testimony regarding feelings of abandonment suffered by Lynn's children was properly categorized as mental anguish and was properly excluded. Under the unique facts of this case, we see no reflection of passion, prejudice, bias or

any erroneous basis in the zero damages verdict.

[¶ 30] The verdict appealed from in appeal number 00–254 is affirmed in all respects. Because no damages were awarded, appeal number 00–255 is dismissed as moot.

---

3. Jury Instruction #3 contained the following language: "The jury is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. In so doing, you may give it such weight as you think it is entitled in the light of your experience and knowledge of human affairs."