**IN THE SUPREME COURT, STATE OF WYOMING**

**2014 WY 28**

**OCTOBER TERM, A.D. 2013**

*February 25, 2014*

IN THE MATTER OF THE
WRONGFUL DEATH OF DANIEL P.
SORAN, II, DAN SORAN, PERSONAL
REPRESENTATIVE:

DAN SORAN, LYNETTE SORAN and
SARAH SORAN,

Appellants
(Plaintiffs),

v.                                                   S-13-0098

LAURA SORAN,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellants:*
　　　Thomas B. Jubin of Jubin & Zerga, LLC, Cheyenne, WY, and Michael L. Weiner
　　　of Yaeger, Jungbauer & Barczak, PLC, Saint Paul, MN.  Argument by Mr. Jubin.

*Representing Appellee:*
　　　Scott W. Meier, Lucas Buckley, and Traci L. Lacock of Hathaway & Kunz, P.C.,
　　　Cheyenne, WY.  Argument by Mr. Meier.

*Before KITE, C.J., and HILL, VOIGT\*, BURKE, and DAVIS, JJ.*

*\*Justice Voigt retired effective January 3, 2014.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**HILL,** Justice.

[¶1]   This case involves a wrongful death claim brought on behalf of the beneficiaries of Daniel P. Soran, II (Decedent).   Decedent's father, in his capacity as personal representative, settled the wrongful death claim with the applicable liability insurance companies for $400,000.  Thereafter, a dispute arose between the beneficiaries as to how the settlement proceeds should be distributed, with Decedent's allegedly estranged wife, Laura Soran, on one side, and Decedent's parents and sister on the other side.  Following a bench trial on distribution of the damages, the district court awarded Laura Soran 75% of the settlement proceeds and divided the remainder of the proceeds among Decedent's parents and sister.  Decedent's parents and sister appeal, contending that the court erred in imposing on them the burden to disprove Laura Soran's damages and that the court's distribution was clearly erroneous in light of the evidence.  We reverse and remand for proceedings consistent with the direction herein.

## ISSUES

[¶2]   Decedent's parents and sister, Appellants, present the issues for our review as follows:

> 1.   The trial court erred as a matter of law, in imposing the burden upon other beneficiaries to disprove the estranged wife's claim to wrongful death damages.
>
> 2.   When distributing settlement proceeds to wrongful death beneficiaries, the trial court's decision to award 75% of these proceeds to the estranged wife was clearly erroneous where the evidence proved a clear and unquestionable mutual intent to end the marriage, and where the estranged wife failed to prove the loss of a future relationship with the decedent.

## FACTS

[¶3]   On February 19, 2011, Decedent died of injuries sustained in an automobile accident.  Decedent was survived by his wife, Laura Soran, by his parents, Dan and Lynette Soran, and by his sister, Sarah Soran.  Robert A. Curran was the driver of the vehicle in which Decedent was a passenger when he died, and Decedent's father, Dan Soran, in his capacity as wrongful death personal representative, settled with Curran's insurance providers for the sum of $400,000.  A dispute arose between Decedent's beneficiaries as to how the settlement proceeds should be distributed.  On October 18, 2011, Dan Soran, again in his personal representative capacity, filed a Rule 67 motion to

1

deposit the settlement proceeds for holding by the clerk of court until such time as their proper distribution among Decedent's survivors could be determined.

[¶4]   On February 4, 2013, a bench trial was held to determine distribution of the settlement proceeds. Decedent's parents and sister were represented on one side of the dispute, and they framed the dispute in their pretrial memorandum as follows:

> The remaining dispute lays between, on the one hand, Daniel's estranged wife Laura Soran, and on the other, Daniel's immediate family, consisting of his father, mother, and sister (respectively Dan, Lynn and Sarah Soran). Daniel's parents and sister collectively dispute the portion claimed by Laura, based on evidence that the marriage between Daniel and Laura was irretrievably broken, and that Daniel had unquestionably planned to divorce Laura. In addition to presenting evidence showing the extremely close, loving and ongoing relationship between Daniel and his parents and sister, an additional focus at trial will be on the extensive evidence documenting Daniel's intent to end his marriage to Laura, refuting her damage claims.

[¶5]   Decedent's wife, Laura Soran, was represented on the other side of the dispute, and she described the dispute as follows in her pretrial memorandum:

> Laura Soran claims that she has significant damages resulting from the death of her husband, Daniel P. Soran, II. Laura Soran's damages include economic damages of loss of support as well as non-economic damages resulting from the loss of care[,] comfort and society of Decedent.
> On information and belief, the other wrongful death beneficiaries claim that they have damages resulting from the death of Decedent and further claim that Laura Soran and Decedent's marriage would have ended in divorce and that, therefore, Laura Soran's damages in this matter are limited to the care, comfort, society and support that Laura Soran would have received prior to any divorce.
> Laura Soran denies that her marriage would have ended in divorce.

[¶6]   At trial, Decedent's parents and sister submitted evidence of their close relationship with Decedent. They also presented evidence, through testimony and exhibits, including copies of text messages, and divorce documents, that Decedent and his wife were living separately within their home, that Decedent's wife was making plans

2

to move from the home, and that Decedent and his wife had divided property, had found new homes for their pets, and were planning to divorce. Laura Soran, on the other hand, testified that she felt Decedent had a drinking problem, that the actions she had taken toward divorce in the months before Decedent's death were intended to force him to get help, and that she was not certain that she and Decedent would ultimately have divorced. She also testified concerning the economic loss she suffered as a result of Decedent's death and the loss she suffered as a result of losing the companionship of Decedent, who she described as her best friend.

[¶7]  On February 25, 2013, the district court issued its order distributing the settlement proceeds. The court ordered Decedent's wife, Laura Soran, to receive a 75% share of the settlement proceeds, Decedent's parents to each receive a 10% share, and Decedent's sister to receive a 5% share. Decedent's parents and sister timely filed a notice of appeal.

## STANDARD OF REVIEW

[¶8]  The parties' claims to distribution of the wrongful death settlement proceeds were tried to the court, and we therefore apply the following standard of review:

> Following a bench trial, this court reviews a district court's findings and conclusions using a clearly erroneous standard for the factual findings and a *de novo* standard for the conclusions of law. *Piroschak v. Whelan*, 2005 WY 26, ¶ 7, 106 P.3d 887, 890 (Wyo. 2005).

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

> *Piroschak*, ¶ 7, 106 P.3d at 890. Findings may not be set aside because we would have reached a different result. *Harber v. Jense [Jensen]*, 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo. 2004). Further,

we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

*Id*.

*Pennant Service Co., Inc. v. True Oil Co., LLC*, 2011 WY 40, ¶ 7, 249 P.3d 698, 703 (Wyo. 2011) (quoting *Hofstad v. Christie*, 2010 WY 134, ¶ 7, 240 P.3d 816, 818 (Wyo. 2010)) (some citations omitted). We review the district court's conclusions of law *de novo. Lieberman v. Mossbrook*, 2009 WY 65, ¶ 40, 208 P.3d 1296, 1308 (Wyo. 2009).

*Claman v. Popp*, 2012 WY 92, ¶ 22, 279 P.3d 1003, 1012 (Wyo. 2012).

## DISCUSSION

### A. <u>Burden of Proof</u>

[¶9]    Decedent's parents and sister contend that in allocating the wrongful death settlement proceeds, the district court improperly shifted the burden to them to prove that Decedent's marriage to Laura Soran would not have continued had Decedent survived and thus improperly resolved any doubt on that question against them.  Based on our review of the court's order, we must agree.

[¶10]  Wyoming's wrongful death statute provides as follows concerning damages:

The court or jury, as the case may be, may award such damages, pecuniary and exemplary, as shall be deemed fair and just. Every person for whose benefit an action for wrongful death is brought may prove his respective damages, and the court or jury may award such person that amount of damages to which it considers such person entitled, including damages for loss of probable future companionship, society and comfort.

Wyo. Stat. Ann. § 1-38-102(c) (LexisNexis 2013).  Under Wyoming's wrongful death statute, "[n]o damages can be awarded beyond those damages that are proven at trial." *Knowles v. Corkill*, 2002 WY 119, ¶ 25, 51 P.3d 859, 866 (Wyo. 2002).  This Court has further explained:

Under the statute, damages are not presumed. Each individual participating must bring and prove their respective claim for damages. *See Farmers Ins. Exchange v. Dahlheimer*, 3 P.3d 820, 823 n. 1 (Wyo.2000) ("each person entitled to participate must establish damages").

*Knowles*, ¶ 23, 51 P.3d at 866.

[¶11]  The district court acknowledged the above-quoted burden of proof, but it then went on to state as follows concerning the evidence relating to Decedent's marriage (our emphasis added):

>        4.    Having determined that Laura is a proper beneficiary under the wrongful death statute, the Court must address the effect of the evidence concerning her and Daniel's marriage.  Initially, this Court notes that there is no Wyoming law specifically on point.  Fair guidance can be found by the following statement in Recovery for Wrongful Death:
>
>> The essence of the question of appropriate damages in death actions is, "Has an appropriate plaintiff suffered compensable damage, and, if so, to what extent?"  This is the question the fact-finder must answer, not some separate question—rife with moral connotations—which might be, "Should one who is guilty of marital misconduct or familial negligence be allowed to recover damages in spite of that misconduct or negligence?"
>>
>> Thus the general rule as to the role of intra-family relations is that the right to maintain an action for the wrongful death is not destroyed entirely by less-than-perfect relations between spouses or by misconduct of either spouse so long as it does not culminate in a divorce.  Rather, the relationship or misconduct may affect the *amount* of recovery.  The general rule applies whether the benefits in question are defined by statute or determined by precedent.  However, an action for compensation for the death of a purported spouse cannot be sustained where the marriage is shown to be invalid.
>
> 2 Stuart M. Speiser et al., *Recovery for Wrongful Death* § 9.1 (4th ed. 2005).

5

> Plaintiff's (sic) argue that "wrongful death recoveries are premised entirely on post-death damages" and based on the evidence regarding Laura and Daniel's marriage they assert she cannot show any expectation of future support, care, comfort or companionship from Daniel. This argument is based largely on speculation about what would have happened between Daniel and Laura. While recognizing the Plaintiffs['] evidence regarding the status of the marriage, it must also consider the wife's testimony, ***and the uncertainty as to what would have happened***. Of paramount importance to this Court is the fact that no divorce was signed or filed and the nature and quality of text message, friend and family testimony ***does not resolve the uncertainty in [P]laintiffs['] favor***.

[¶12] We agree with the district court's observation that less-than-perfect relations between spouses do not destroy the right of a spouse to maintain a wrongful death action but rather may affect the amount of any recovery. Our concern is with the court's analysis following this observation.

[¶13] In evaluating the evidence, the court described the future of the marriage as speculative and uncertain. It then concluded that the evidence presented by Decedent's parents and sister was insufficient to resolve that uncertainty in their favor. Such a conclusion suggests that there is a presumption of damages in favor of a spouse that other damage claimants must overcome. As noted above, however, there is no such presumption under Wyoming's wrongful death statute, and each damage claimant must prove his or her claim to damages. *Knowles*, ¶ 23, 51 P.3d at 866. Thus, if there was an uncertainty as to any future relationship between Decedent and Laura Soran, that uncertainty did not shift the burden to the remaining damage claimants to prove that the relationship probably would have ended. Rather, the burden was on Laura Soran to prove that despite the uncertainty in the marital relationship, she had suffered a "loss of ***probable*** future companionship, society and comfort." Wyo. Stat. Ann. § 1-38-102(c) (emphasis added). Because the court's decision shows that the court concluded that the uncertainty in the evidence weighed in favor of the party who bore the burden of proof, we find that the court erred in its analysis.

[¶14] In so holding, we also reject Laura Soran's contention on appeal that the district court properly allocated the burden of proof because the question of the future viability of Decedent's marriage, which was a question raised by Decedent's parents and sister, was an affirmative defense. First, we note that the district court did not at any point in its analysis refer to the question as an affirmative defense or treat the question as an affirmative defense. Moreover, the question of the future viability of Decedent's

marriage simply is not an affirmative defense. This Court has defined an affirmative defense as follows:

> In pleading, matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it. A response to a plaintiff's claim which attacks the plaintiff's **legal** right to bring an action, as opposed to attacking the truth of claim . . . .

*Matter of Corman*, 909 P.2d 966, 969 (Wyo. 1996) (quoting *Black's Law Dictionary* 60 (6th ed. 1990) (emphasis in original)).

[¶15] The evidence presented by the Decedent's parents and sister relating to the Decedent's marriage was evidence presented to contradict Laura Soran's claim that she had suffered damages based on her loss of probable future companionship, society and comfort. This was evidence directed at the factual basis of Laura Soran's damages claim, not an assertion of a legal bar to her claim. Decedent's parents and sister thus did not assert an affirmative defense in response to Laura Soran's damages claim, and the district court's shifting of the burden of proof was not justified on this ground.

## B.   75% Award to Decedent's Wife

[¶16]  We turn next to the claim of Decedent's parents and sister that the district court's distribution of 75% of the settlement proceeds to Decedent's wife was clearly erroneous in light of the evidentiary record. In particular, they argue that Laura Soran's testimony that her divorce from Decedent was not imminent was too at odds with other evidence, including divorce documents and text messages exchanged between Decedent and Laura Soran, to be considered credible. They further argue that even if Laura Soran's testimony were credible, her testimony did little to substantiate that her marriage to Decedent was likely to continue. To that effect, Decedent's parents and sister cite, among other testimony, the following testimony of Laura Soran:

> Q.    So you were going to get a divorce?
> A.    I was trying. I didn't know what I was going to do. That would be [a] correct statement of – I don't know what was going to happen.
> Q.    When you took your name off his bank account[,] when he took his name off your bank account[,] was that an effort to try to get him to come around or would you agree that that's evidence that the two of you were splitting up?

7

A.     I would agree that I didn't know what I was going to do, and he had asked me to take myself off the bank account. He was asking me to do these things, so I did them.

[¶17]  This Court does not substitute its judgment for that of the trier of fact on questions of witness credibility or the weight evidence should be given. *Claman*, ¶ 22, 279 P.3d at 1012.  Our concern with the district court's findings and award in this case, however, does not stem from the weight or credibility determinations the court made.  We are instead concerned with the inconsistencies evident in the court's findings and rulings.

[¶18]  In making the distribution award, the district court explained:

In making this determination, the Court considered both the degree of the relationship (ie. spousal, parental, sibling) and the nature and quality of those relationships, as well as the decedent's likely future involvement in their lives. The Court, having listened to the claimants and reviewed the exhibits in this matter, concludes that the wife Laura Soran should receive 75%, the father Dan Soran 10%, the mother Lynette Soran [10%], and the sister Sarah Soren [5%].

[¶19]  By this order, the district court declared that Decedent's wife met her burden of proving that she was entitled to 75% of the settlement proceeds based on her loss of "probable" future companionship, society and comfort.  *See* Wyo. Stat. Ann. § 1-38-102(c).  "Probable" means "[h]aving more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt; likely." *Hamburg v. State*, 820 P.2d 523, 529 (Wyo. 1991) (quoting *Barrett v. Green River & Rock Springs Live Stock Co.*, 205 P. 742, 744 (Wyo. 1922)).  If the court's settlement distribution were based on a finding that Decedent's wife had shown that her marriage was likely to continue, then perhaps we would be less troubled by the court's award.  The court's order, however, contains an opposite finding.  In particular, the court found that the future of Decedent's marriage to Laura Soran was uncertain and speculative.  The decision thus rules on the one hand, that the future of Decedent's marriage was uncertain and speculative, but on the other hand, that Decedent's wife suffered the greater percentage of damages for loss of "probable" future companionship, society and comfort.

[¶20] This Court cannot reconcile the district court's conflicting findings—that Decedent's marital relationship was uncertain, and that Decedent's wife was entitled to an award of 75% of the settlement proceeds for loss of "probable" or "likely" future companionship, society and comfort. Moreover, the district court made no other or more specific findings to support its award or to otherwise reconcile the seemingly inconsistent findings. Given the inconsistencies in the district court's findings, we are left with a firm conviction that the court erred.  In particular, it is apparent that the court's error in

applying the burden of proof carried through to the distribution of the settlement proceeds, and the order distributing the settlement proceeds must therefore be reversed. We remand for entry of a distribution order that is supported by findings sufficient to show application of the appropriate burden of proof, with no presumption in favor of any of the damage claimants.

## CONCLUSION

[¶21] The district court's distribution order was clearly erroneous in that it misapplied the burden of proof and improperly presumed damages in favor of Decedent's wife. We reverse and remand for proceedings consistent our direction herein.